ANDREW W. BOYD & another, trustees, *vs.* JAMAICA
PLAIN CO-OPERATIVE BANK.

Suffolk.   January 12, 1979. — March 12, 1979.

Present: KEVILLE, BROWN, & GREANEY, JJ.

*Res Judicata. Collateral Estoppel. Mortgage,* Real estate, Profits on
tax payments. *Escrow.*

Where the plaintiffs in an action against a bank had acquiesced in the
trial and appeal of a similar action against a different bank, *Carpen-
ter* v. *Suffolk Franklin Sav. Bank,* 362 Mass. 770 (1973), *S.C.* 370
Mass. 314 (1976), with the understanding that they would be bound
by the determination of issues in that action, the plaintiffs were
sufficiently identified with the plaintiffs in the *Carpenter* case that
they were precluded from further litigation of issues which were
raised and essential to the judgment in that action. [157-159]
In an action seeking to compel a mortgagee bank to pay or otherwise
account for earnings realized from investment of tax escrow pay-
ments made by mortgagors, findings that if the bank was enriched,
it was not unjustly enriched, and that the bank had not engaged in
any wrongful conduct so that the imposition of a constructive trust
was not warranted, were required in order to make an appropriate
declaration on the plaintiffs' broadly based fiduciary claim, and,
therefore, the judgment in that action barred further litigation of
similar claims based on the theory that a bank had obtained the
escrow funds as a result of the coercive force inherent in the bank's
position as a lender. [159-162]
In an action seeking to compel a mortgagee bank to pay or otherwise
account for earnings realized from investment of tax escrow pay-
ments made by mortgagors, the plaintiffs were precluded by the
policy against claim splitting from litigating claims based on a
theory of unjust enrichment where they had previously acquiesced
in the litigation of the transaction on the theories of escrow and
fiduciary relationship. [163-166]

CIVIL ACTION commenced in the Superior Court on
November 26, 1976.

A motion to dismiss was heard by *Lynch,* J.

*Joseph M. Cohen* for the plaintiffs.

*John J. McCarthy (Stanley V. Ragalevsky* with him) for the defendant.

GREANEY, J. The plaintiffs appeal from the dismissal of their complaint seeking declaratory relief under G. L. c. 231A, on the ground of estoppel by judgment.[1] We affirm the judgment of dismissal.

The procedural history necessary to put the issues in proper perspective is this. The claims arise out of a continuing controversy between certain mortgagors and their mortgagee banks regarding payment of interest on advance real estate tax payments required by the banks under one of the terms of the mortgages. The Boyds in 1973 as two of several claimants bringing claims against several banks, and in conjunction with the *Carpenter* cases,[2] sued the Jamaica Plain Co-operative Bank (bank) to compel it to pay, or otherwise account for, earnings realized from investment of tax payments made by the plaintiffs. *(Boyd I).* The original 1973 complaint in *Boyd I* paralleled the complaint in the original *Carpenter* case *(Carpenter I)* in every material respect and alleged that the bank had commingled the tax payments with its other assets, had invested the pooled assets, had profited thereby, and had neglected and refused to pay the plain-

---

[1] This case is styled as a "pilot" case. It is one of five cases on appeal brought by different mortgagors against savings and cooperative banks to ascertain whether identical claims made in each case are barred by the decisions in *Carpenter* v. *Suffolk Franklin Sav. Bank,* 362 Mass. 770 (1973), S.C. 370 Mass. 314 (1976). The other cases are Boyd *vs.* Quincy Savings Bank (No. 77-483), Boyd *vs.* Mt. Washington Co-operative Bank (No. 77-577), Boyd *vs.* Suffolk Franklin Savings Bank (No. 77-582), and Marin *vs.* Home Savings Bank (No. 77-574). In a stipulation approved by a single justice on July 14, 1977, it was agreed that the cases are similar in their facts and procedural history, and that the opinion in this case would be decisive of the appeal in each of the other cases.

[2] John Warner Carpenter & others *vs.* Suffolk Franklin Savings Bank & others, Superior Court, Suffolk County, Eq. 92262 (1970), decided on appeal, 362 Mass. 770 (1973) *(Carpenter I),* S.C. 370 Mass. 314 (1976) *(Carpenter II).*

tiffs some or all of the fruits of the investment. The complaint predicated liability on assertions that the bank held the funds as an "escrowee and fiduciary." *Boyd I* and the other cases filed with it were subsumed into *Carpenter I*, with the latter designed as the pilot case for trial purposes.[3] *Carpenter I* was dismissed by the trial judge for "failure to state any basis for granting the declaratory relief requested," but, on appeal, the Supreme Judicial Court reversed that dismissal, holding that the bill adequately stated a controversy appropriate for declaratory relief. *Carpenter* v. *Suffolk Franklin Sav. Bank,* 362 Mass. 770, 771, 781 (1973). The case was remanded to the Superior Court and, following certain amendments to the bill, the action was fully tried on all the liability issues it raised and resulted in a lengthy statement of findings of fact and rulings of law disposing of those issues. The case was again appealed to the Supreme Judicial Court which, in *Carpenter II*, determined (affirming the decision of the trial judge) that certain causes of action had not been made out by the mortgagors, nor had specific circumstances been established which would require the imposition of restitutionary remedies. Specifically ruled out by the trial judge, and by the Supreme Judicial Court in *Carpenter* v. *Suffolk Franklin Sav. Bank* , 370 Mass. 314 (1976), were claims that express trusts had been created and that the nature of the transactions between the mortgagors and their bank had given rise to a fiduciary relationship or indicated the presence of fraud or unjust enrichment so as to occasion the imposition of a constructive trust or warrant a finding that a resulting trust existed. Following the receipt of the rescript in *Carpenter II, Boyd I* was dismissed with prejudice without objection by the plaintiffs.

[3] The appendix on the appeal in *Carpenter II* revealed at least ten pending cases raising the same issues as presented in *Carpenter I*. Counsel for the Boyds filed twenty-one class actions on behalf of different plaintiffs as part of the extensive tax escrow litigation, of which four cases were brought by the Boyds against their mortgagees.

The Boyds, following these events, proceeded along two lines. They sought first to amend the dismissed *Boyd I* complaint to assert new claims against the bank, and they filed the present action (*Boyd II*). Both the proposed amendment to the original complaint and the new pleading sought a judicial declaration under G. L. c. 231A (since the Boyds were not within the coverage of legislation requiring banks in their discretion to pay interest[4]), that the bank had been unjustly enriched because its "leave" to mingle the advance payments with its own funds was due to "coercive force inherent in the [bank's] position as a lender," and sought interest to be paid on the monthly real estate tax payments which had been made to the bank after July 1, 1975, the effective date of G. L. c. 183, § 61. The trial judge (the same judge involved throughout *Carpenter*)[5] in an extensive memorandum denied the motion to amend *Boyd I*[6] and allowed the bank's motion to dismiss the new action on the basis of "res judicata and collateral estoppel." He ruled in effect that the issues raised by *Boyd II* had been raised, tried, and decided adversely to the Boyds in the *Carpenter* decisions. He also sought to exercise his discretion under G. L. c. 231A, § 3, by ruling, as an alternative ground for dismissal, that judicial resolution of the issues in *Boyd II* would not "terminate the controversy." We find that the dismissal on the basis of "res judicata and collateral es-

---

[4] G. L. c. 183, § 61, inserted by St. 1973, c. 299, § 1, effective July 1, 1975. This statute applied only to dwelling houses of four or fewer separate households occupied or to be occupied in whole or in part by the mortgagor. The Boyds, and the plaintiffs in the other cases here, do not meet this definition.

[5] The judge was specially assigned to hear all the voluminous tax escrow litigation. After considerable discussion, and many hearings, with counsel for all the claimants, all other actions were ordered stayed with the exception of *Carpenter*, which was put to trial on all the liability issues.

[6] The denial of the motion to amend *Boyd I* was correct in view of the fact that the case had been dismissed with prejudice and all of the claims in the proposed amendment were asserted in *Boyd II*.

toppel" was correct[7] and, as a result, need not review the discretionary ground for dismissal.

1. The nub of the plaintiffs' argument with regard to the judge's preclusion rulings (res judicata — collateral estoppel) is to the effect that the *Carpenter* decisions are not decisive of *Boyd II* since they dealt only with the issue of the bank's liability as an "escrowee." The plaintiffs' claim that the judgment in *Carpenter II* expressly left open their right to seek an accounting from the bank on the basis of a theory that the bank's acquisition and use of the money in the accounts amounted to unjust enrichment.

As a first point, we note the circumstances manifest in the records, that the Boyds cast their lot with the plaintiffs in the *Carpenter* cases as to the litigation of all the liability issues that were presented by that action and which were finally determined and were essential to the judgment. This identity of interests is revealed in part by the Boyds' acquiescence in the trial and appeal of the *Carpenter* cases, the dismissal of *Boyd I* with prejudice,[8] and in the main through the Boyds' admission before us

---

[7] Res judicata is an affirmative defense to be raised by answer, Mass.R.Civ.P. 8(c), 365 Mass. 750 (1974), and is not generally an appropriate matter to be raised in a motion to dismiss under rule 12(b)(6), 365 Mass. 755 (1974). We pass any question involved in the use of that procedure here in view of the fact that the parties have briefed and treated the issues on prior adjudication as properly raised, and we note that in certain circumstances the defense of former adjudication can be presented in a rule 12(b)(6) context where all of the materials necessary for the decision are official records available to the judge ruling on the motion and not subject to dispute, and can be read together with the complaint. See *Dwight* v. *Dwight*, 371 Mass. 424, 425-426 (1976); *Florasynth Labs. Inc.* v. *Goldberg*, 191 F.2d 877, 880 (7th Cir. 1951); *Larter & Sons* v. *Dinkler Hotels Co.*, 199 F.2d 854, 855 (5th Cir. 1952); *Scholla* v. *Scholla*, 201 F.2d 211, 213 (D.C. Cir.), cert. denied, 345 U.S. 966 (1953); *Miller* v. *Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965). The singular involvement of the trial judge with all phases of this litigation also supports the use of the rule 12(b)(6) motion in this case.

[8] A dismissal "with prejudice" constitutes an adjudication on the merits as fully and completely as if the order had been entered after

that "*Carpenter* is dispositive of all claims stated in [the] original pleadings, and it established the rights and obligations of mortgagees and mortgagors in respect to advance deposits for real estate taxes prior to July 1, 1975." The records support the conclusion that despite possible factual differences in the content of the tax clauses in the mortgages, and differences in the events surrounding agreement to the clauses, the Boyds were content to treat their circumstances as sufficiently similar to that of the Carpenters to permit the *Carpenter* actions to control the factual premises of the Boyds' first action.

This causes the Boyds to be sufficiently identified with the Carpenters in the first litigation for purposes of the application of a preclusion analysis, either because they were "privies" with them, *Pan Am. Match, Inc.* v. *Sears, Roebuck & Co.*, 454 F.2d 871, 874 (1st Cir.), cert. denied, 409 U.S. 892 (1972), or because the Carpenters were permitted to act as their "virtual representative[s],"[9] *Aerojet Gen. Corp.* v. *Askew*, 511 F.2d 710, 719 (5th Cir. 1975). And though the unique facts in these cases do not fit squarely within the categories suggested by the Restatement of Judgments for party identification, we also find general support in that authority for our view that the Boyds have an identity of interests with the Carpenters. Thus, "[a] person who expressly or impliedly agrees to be bound

trial. See *Creek Indians Natl. Council* v. *Sinclair Prairie Oil Co.*, 142 F.2d 842, 845 (10th Cir.), cert. denied, 323 U.S. 781 (1944); *Cream Top Creamery* v. *Dean Milk Co.*, 385 F.2d 358, 362 (6th Cir. 1967); *American Needle & Novelty Co.* v. *Schuessler Knitting Mills, Inc.*, 379 F.2d 376, 378 (7th Cir. 1967); *Gambocz* v. *Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972); *Pfeiffer Co.* v. *United States*, 385 F. Supp. 367, 371 (E.D. Mo. 1974), aff'd, 518 F.2d 124 (8th Cir. 1975).

[9] This label is used to identify a situation where the previous party is "sufficiently identified with [the new party] to represent the legal rights of [the new party], *Pan Am. Match, Inc.* v. *Sears Roebuck & Co.*, *supra* at 874, whether the identification arises from a relationship between the parties, *Dudley* v. *Smith*, 504 F.2d 979, 982 (5th Cir. 1974), or from actual participation and control of the litigation by one not a party, *Kreager* v. *General Elec. Co.*, 497 F.2d 468, 472 (2d Cir.), cert. denied, 419 U.S. 861 (1974).

by the determination of issues in an action between others is bound in accordance with the terms of his agreement," Restatement (Second) of Judgments § 84 (Tent. Draft No. 2, 1975), and "[a] person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of the rules of res judicata as though he were a party," *id.* § 85(1), representation occurring when the person invests the party "with authority to represent him in an action," *id.* § 86(1)(b). Since both the Boyds and the bank chose to treat the *Carpenter* action as the target case for the litigation of all the issues raised in that action and actually litigated, the Boyds become bound by, and the bank becomes entitled to the benefits of, the rules as to issue preclusion even though neither party was an actual litigant in the action.[10]

2. *Boyd I* sought a declaration as to a variety of issues relating to the status of the tax accounts centering on prototype claims that the banks held the funds as an "escrowee" or under a fiduciary relationship. For adjudication purposes it is recognized that "[a] judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action." Restatement (Second) of Judgments § 76 (Tent. Draft No. 1, 1973). See also Developments in the Law — Res Judicata, 65 Harv. L. Rev. 818, 881 (1952); Developments in the Law — Declaratory Judgments, 1941-1949, 62 Harv. L. Rev. 787, 843 (1949). The rules of issue preclusion foreclose further litigation of an issue when "an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the

---

[10] The circumstances of this case distinguish it from those where the parties were not sufficiently identical to permit the application of issue preclusion principles. Compare *Massa* v. *Stone*, 346 Mass. 67, 72-73 (1963); *Rudow* v. *Fogel*, 6 Mass. App. Ct. 822 (1978), *S.C.* 376 Mass. 587 (1978).

judgment." Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, 1977). See also *Cambria* v. *Jeffery*, 307 Mass. 49 (1940); *Wayland* v. *Lee*, 325 Mass. 637, 641 (1950); *Henchey* v. *Cox*, 348 Mass. 742, 746-747 (1965); *Rudow* v. *Fogel*, 376 Mass. 587 (1978).

To apply these rules in this case, we look to the entire record (both trial and appellate) in the *Carpenter* cases, including extrinsic evidence,[11] to ascertain what issues were tried and determined and were essential to the judgment (hence preclusive), with a view to comparing the adjudicated issues with the issues sought to be raised by *Boyd II*. In so doing we keep in mind that "[t]he statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong," *MacKintosh* v. *Chambers*, 285 Mass. 594, 596 (1934); *Fassas* v. *First Bank & Trust Co.*, 353 Mass. 628, 629 (1968), and that "[a] party cannot preserve the right to bring a second action after the loss of the first, merely by having circumscribed and limited the theories of recovery opened by the pleadings in the first," *MacKintosh* v. *Chambers, supra* at 597 and cases cited. (See discussion in part 3, *infra*.) We find after this comparison that the issue of unjust enrichment was litigated in *Carpenter* and that the findings on that issue were essential to the judgment.

In asking the court in *Carpenter* to declare their rights the plaintiffs under the allegation of the existence of a "fiduciary relationship" presented several claims that implicated unjust enrichment as a restitutionary principle.[12] They began with the claim that the intention of the

---

[11] Restatement (Second) of Judgments § 68, Comment f (Tent. Draft No. 4, 1977).

[12] A right to restitution can arise from unjust enrichment, and the person who is enriched is "unjustly enriched if the retention of the benefit [acquired by him] would be unjust." Restatement of Restitution § 1 (1937). Unjust enrichment can occur in a number of situations, including situations where the benefit sought to be recovered has been acquired as the result of fraud, by a mistake of fact or law, through

parties was to create an express trust by way of the creation of a special deposit. (Both the trial and appellate courts found that the tax funds were held as general deposits without any intent to create express trusts by way of special deposits.) They argued that the imposition of a constructive trust was warranted because a fraud may have been practiced. (The trial judge ruled this remedy was inappropriate since no fraud was exercised by the bank and no fiduciary relationship existed. The issue was abandoned on appeal.) They also sought to impose a constructive trust on the basis that the bank was unjustly or unfairly enriched and had engaged in wrongful conduct. (The trial judge ruled that if the bank was enriched, it was not unjustly enriched[13] and had not engaged in any wrongful conduct so that "the imposition of a constructive trust as a remedy to redress unjust enrichment is not warranted.") At the appellate level, in *Carpenter II*, the Carpenters contested the findings of the trial judge (with the exception of the findings as to the existence of fraud) as to the need to impose a constructive trust or find the existence of a resulting trust. The various appellate contentions were all resolved unfavorably to the Carpenters, and in particular, the Supreme Judicial Court held that "[t]here was no such unjust enrichment ... as to justify the imposition of a constructive trust." 370 Mass. at 327.

The extensive findings and rulings in *Carpenter II*, both after trial and on appeal, were required to resolve all these issues in order to make an appropriate declaration

---

the exercise of coercion by one party on the other, or by conduct that is tortious. *Id.* c. 1, topic 1, & cc. 2, 3, & 7.

[13] The trial judge found as a fact on this point that "[t]he bank did not generally charge for any deficiency in a mortgagor's tax account by reason of an increase in the tax rate"; that "[w]hen the bank invested available funds ... it realized a profit thereon returnable to its depositors in the form of a dividend," and that "[t]he margin the bank 'netted' between the return on its investments and the interest rate it paid its depositors was in the vicinity of one percent."

on the broadly based fiduciary claim. Because of this we rule, for preclusion purposes, that the findings on all issues outlined above were essential to the judgment in *Carpenter II*.[14]

A careful examination of the *Boyd II* complaint reveals that its unjust enrichment claim merely restates the issues already litigated in the *Carpenter* cases. At the core of the pleading is an assertion that an accounting is needed to remedy unjust enrichment due to the bank's having obtained the escrow funds as a result of the "coercive force inherent in the defendant's position as a lender." This, in our opinion, is a reiteration of one aspect of the constructive trust issues in the *Carpenter* cases that were predicated on the alleged fraud of the bank, or on the claim that the tax account clauses were unconscionable in some respect, or that the mortgagors had been forced into accepting the tax escrow agreement as a result of the dominant position of the bank.[15] The findings in *Carpenter II* bar a second declaration on the same or substantially similar allegations, *Sadler* v. *Industrial Trust Co.*, 327 Mass. 10, 13 (1951), where there has been no showing that the Boyds' claim is materially different from the issues in the *Carpenter* cases.

---

[14] In presenting their issues on appeal the Carpenters observed, with reference to the many issues litigated, the need to find the existence of a resulting trust or to impose a constructive trust, that their claims were broadly based, and that they would not "undertake to engage in an academic adventure to search out a precise semantic cubicle into which to place the issue." We take this as an indication that they sought to have all of their assertions under the fiduciary claim (with the exception of the averment of fraud) determined. See also Restatement of Restitution § 160, Comment 6 (1937): "A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property."

[15] In *Carpenter II* the Supreme Judicial Court found that "[n]o doubt the contracts between the plaintiffs and the bank were adhesion contracts but we are not prepared to hold that they were unconscionable in the aspects here in issue," and, as indicated above, found that there was no unjust enrichment so as to justify the imposition of a constructive trust. 370 Mass. at 327.

3. Even if we accept, for the sake of argument, that an unjust enrichment claim based on coercion was left open by *Carpenter II*, or, if litigated, that the finding on that claim was unnecessary to the judgment, we believe that a second principle of the law of prior adjudication should be applied here to bar reassertion of the claim. This is the principle prohibiting claim splitting which states that the entry of a "valid and final judgment extinguishes . . . all rights of a plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 61(1) (Tent. Draft No. 5, 1978). This principle will be applied to extinguish a claim even though the plaintiff is prepared in the second action to present evidence, grounds, or theories of the case not presented in the first action or to seek remedies or forms of relief not demanded in the first action.[16] This policy promotes judicial economy and has been applied by our courts to bar successive actions. A typical application of this principle in a declaratory judgment context occurs in *Fassas* v. *First Bank & Trust Co.*, 353 Mass. 628 (1968). There an action which sought a declaration that certain mortgages were void because obtained by fraud and in violation of truth in lending requirements was held barred by a judgment in a prior declaratory judgment action which had sought to void the same mortgages on theories of fraud, duress, and lack of consideration. The court made the following observations on the issue of claim splitting: "The statement of a different form of

---

[16] Restatement (Second) of Judgments § 61.1, Comment a (Tent. Draft No. 5, 1978): "The rule of § 61 puts some pressure on the plaintiff to present all his material relevant to the claim in the first action." Comment b: "A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment." Comment d: A change in the theory or ground from the first action "does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction."

liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong." *Id.* at 629. Holding that the two actions were founded on the violation of the same legal rights, the court concluded that in essence "[t]he object and 'petitory' conclusions of both suits are the same," and that introduction of a new ground to support the same cause would not prevent a bar. *Id.* at 630.[17]

While we recognize as a general principle that the policy against claim splitting does not apply to declaratory judgment actions to the same extent that it does to coercive actions,[18] we agree with the comment that "[w]hen ... the second action also seeks a declaration, it might properly be dismissed ... if the present issues could well have been raised in the former action." Developments in the Law — Declaratory Judgments, 1941-1949, 62 Harv. L. Rev. 787, 844 (1949). *Sadler* v. *Industrial Trust Co.*, 327 Mass. 10, 13 (1951). We are of the opinion that this policy should be applied in the context of this case.

The claims raised by the Carpenters and the Boyds originally all pertained to a common nucleus of operative facts, namely the events surrounding the execution of the tax escrow clauses and the conduct of the bank in administering the accounts. These events were cast into the form of multiple lawsuits based on essentially the same

---

[17] See also *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. 275, 279-280 (1933) ("a cause of action cannot be split and made the subject of several proceedings in the court"; and in applying the policy against claim splitting in successive coercive suits); *Forman* v. *Wolfson*, 327 Mass. 341, cert. denied, 342 U.S. 888 (1951) (action alleging breach of warranty arising out of a surgical procedure barred by judgment for the defendant in a tort action concerning the same operation); *Ratner* v. *Rockwood Sprinkler Co.*, 340 Mass. 773 (1960) (action alleging breach of contract for defect in a sprinkler system barred by judgment in a previous tort action on a theory of negligence arising out of the same facts). Contrast, *Sandler* v. *Silk*, 292 Mass. 493 (1935) (no bar when the issues in the second action had not been raised and could not have properly been raised in the first action).

[18] See generally the discussion of these differences in Developments in the Law — Res Judicata, 65 Harv. L. Rev. 818, 881-882 (1952).

facts and circumstances and all the actions were joined into one convenient unit for trial purposes with the *Carpenter* cases as the flagship. Since the fact patterns were sufficiently similar to make a common claim, there was one transaction for trial purposes. Having acquiesced in litigation of the transaction on the theories of escrow and fiduciary relationship the plaintiffs are now precluded from relitigating the claims on a theory of unjust enrichment. As expressed by the Restatement, "[t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measure of liability or different kinds of relief." Restatement (Second) of Judgments § 61, Comment c (Tent. Draft No. 5, 1978).

We are not impressed by the plaintiffs' arguments that they should not be barred or precluded from further litigation in this area. We take these arguments as assertions that the plaintiffs fall within one or more of the exceptions to the general rule of issue preclusion[19] or within the exceptions to the rule prohibiting claim splitting.[20] As to preclusion, the plaintiffs were not denied a right to seek appellate review on the issues in *Boyd I* since they acquiesced in using *Carpenter* as the appellate test case on all of the issues raised by their claims. They had adequate opportunity and incentive to litigate their action, and availed themselves of the opportunity to obtain a full and fair adjudication of the issues in their case

---

[19] The exceptions to the general rule of issue preclusion are contained in Restatement (Second) of Judgments § 68.1 (Tent. Draft No. 4, 1977).

[20] The exceptions to the rule prohibiting claim splitting are contained in Restatement (Second) of Judgments § 61.2 (Tent. Draft No. 5, 1978).

by the trial and appeal of *Carpenter*. In view of the defini-
tive conclusion of the Carpenter claims, and legislative
action in the area (see G. L. c. 183, § 61) this is not a case
where the public interest indicates a clear and convincing
need for a new determination of the issues.

As to the claim splitting principle, we also see no excep-
tion available to the plaintiffs which would permit the
maintenance of the present action. There was no agree-
ment to split the claim, or court permission to do so, and
the plaintiffs have not shown clearly and convincingly
that the policies favoring preclusion of the second action
are overcome for any extraordinary reason. The particu-
lar paragraph in *Carpenter II* concerning unjust enrich-
ment relied upon by the plaintiffs as opening the gate for
this action we read as dicta,[21] not designed to overturn the
trial judge's findings as to the absence of unjust enrich-
ment, and, therefore, not justification for this action. Con-
trary to the Boyds' position, the unjust enrichment issue
was eliminated in *Carpenter II* when the court stated,
"There was no such unjust enrichment, we hold, as to
justify the imposition of a constructive trust." *Carpenter
II*, 370 Mass. at 327. The difference in the time periods
between *Boyd I* and *Boyd II* for which relief is sought also
is insufficient to overturn the effect of the judgment,
since the underlying theory of liability in the new action
had been rejected in the prior action.

The conclusions stated above make it unnecessary to
consider whether the judge abused the discretion con-
ferred upon him by G. L. c. 231A, § 3, in declining to make
the declaration sought on the basis that it would not
terminate the controversy.

In summary, we hold that the matters decided in *Car-
penter* included the issues sought to be raised here, were
essential to the judgment entered, and that as a result the

---

[21] *Carpenter II*, 370 Mass. at 327. We read the language as a com-
ment with reference to the Legislature's motivation in adopting G. L.
c. 183, § 61.

plaintiffs are precluded from relitigating them. To the extent that the plaintiffs' action in *Boyd II* may be perceived as new, we find that the rules against claim splitting prohibit further litigation. We agree with the metaphorical dictum that "[a] party is entitled to one day in court, but only one. No reason appears why it should make a difference under what type of cloud the sun happened to set." *Hadge* v. *Second Fed. Sav. & Loan Assn.*, 409 F.2d 1254, 1257 (1st Cir. 1969).

*Judgment affirmed.*