DAVID D. DOWD, administrator, vs. CHRISTOPHER J. MORIN
& others[1]
(and a companion case[2]).

Worcester. Suffolk. January 17, 1984. — November 19, 1984.

Present: BROWN, KASS, & WARNER, JJ.

*Probate Court,* Accounts, Revocation of judgment. *Fiduciary. Res Judicata.*

In a guardianship case in which the guardian had died without filing an ac-
count of his guardianship, and the guardian's administrator with the will
annexed filed a first and final account at a time when the former ward
was no longer a minor, revocation of the judgment allowing the account
was not required by the fact that the former ward's wife and minor
children had not been given notice of the proceedings. [790-791]
An appearance by an attorney representing a former ward in a proceeding
on a petition to render an account was not an appearance in subsequent
proceedings on the allowance of the account, nor did it amount to a
request "in writing for notice of proceedings on account" within the
meaning of G. L. c. 206, § 24(5). [791-792]
In the circumstances, former wards who had attained majority before the
time of a proceeding seeking allowance of a first and final guardianship
account had been filed and who had received notice of the proceeding
were not entitled to relief from the judgment allowing the account on
the ground that schedule C of the account showed a zero balance or that
the wards' attorney had not been given notice of the proceeding. [792]
Former wards seeking in an action in the Superior Court to enforce equitable
interests in real estate improved by their former guardian using funds
of the wards were barred from litigating their claim by principles of res
judicata, where the first and final account of the guardianship, clearly
setting out the expenditures in question and showing that the guardian
held no assets of the former wards had been filed and allowed in a
Probate Court proceeding. [793-794]

PETITION for guardianship filed in the Probate Court for the
county of Worcester on February 15, 1963.

[1] Gregory Morin and Mary Louise Morin Roche.

[2] Christopher J. Morin & another *vs.* Mary Louise Morin Roche & others.

A motion for relief from judgment, filed on December 10, 1982, was heard by *Conlin, J.*

CIVIL ACTION commenced in the Superior Court Department on March 12, 1980.

A motion to dismiss was heard by *Garrity, J.*

*Roger J. Brunelle* for Christopher J. Morin & others.

*David D. Dowd,* pro se.

WARNER, J. These consolidated appeals from actions by the Probate and Superior Courts involve a dispute between the estate and heirs of a guardian and the former wards of the guardian about the possible interests of the wards in real estate improved by the guardian with funds of the wards.

1. *The Probate Court proceedings.* By decree of February 15, 1963, Thomas B. Dowd was appointed as the guardian of the person and property of his minor nephews and niece, Christopher, Gregory and Mary Louise Morin (Roche).[3] Dowd took the children into his home to reside with his wife and seven children. It was necessary to enlarge the home to accommodate the wards. To that end, Dowd filed a petition seeking the approval of the use of the wards' funds. After hearing, and with the assent of a guardian ad litem appointed to represent the wards' interests, a decree was entered on June 25, 1964, authorizing, among other things, the expenditure of the wards' funds in a sum not to exceed $25,000 for the purpose of providing living accommodations for the wards in Dowd's home. The youngest of the wards reached majority in 1971, and Dowd subsequently distributed the balance of the guardianship funds. Dowd died on February 19, 1976, never having filed an account of his guardianship.

On the petition of Christopher and Gregory Morin, an order entered on October 31, 1979, directing Dowd's administrator with the will annexed to render an account of Dowd's guardianship. See G. L. c. 205, § 7A. A first and final account was filed on December 10, 1981. Items 21 through 26 of schedule B of the account showed total expenditures of $24,772.31 for

---

[3] Dowd had been appointed guardian by the will of the children's mother, their father having predeceased her. See G. L. c. 201, § 3, as in effect prior to St. 1976, c. 515, § 23.

"work on house";[4] schedule C showed a zero balance. See G. L. c. 206, § 2. Notice of the presentation of the account was mailed to and received by the former wards. See Mass. R.Civ.P. 72(b)(1), as appearing in 371 Mass. 911 (1977); G. L. c. 206, § 24(3).[5] No appearance or objection to the account was filed, see Mass.R.Civ.P. 72(b)(1)(A) & (C), and a judgment allowing the account as filed was entered on January 14, 1982. See rule 72(b)(7).

On December 20, 1982, Christopher and Gregory Morin filed a motion and an "additional motion" for relief from the judgment allowing the account, "pursuant to rule 60(b)." On appeal they argue the following grounds: (1) failure to give notice to their attorney of record on the petition to render the account, (2) fraud or "constructive fraud," (3) failure to serve notice on all persons interested pursuant to G. L. c. 206, § 24, and (4) manifest error in the failure to show a balance due in schedule C of the account. On the same day Kathleen Morin, the wife of Christopher, filed a motion asking that the account be reopened for failure to give notice to her and the minor children of Christopher as his heirs presumptive. See G. L. c. 206, § 24(3). The Probate judge made findings of fact and conclusions of law and denied the motions. The moving parties have appealed.

2. *The Superior Court proceedings.* On March 12, 1980, after the Probate Court order to render a guardianship account but before the filing of that account, Christopher and Gregory Morin commenced an action in the Superior Court against the children of Dowd[6] seeking to enforce equitable interests in the real estate improved by Dowd with the wards' funds.[7] On July

[4] The parties are in agreement that this sum represents expenditures under authority of the decree of June 25, 1964.

[5] No publication of the notice was made since the former wards had actual notice.

[6] The former ward, Mary Louise Morin (Roche), was also named as a defendant. In an affidavit filed in connection with her brothers' motion for partial summary judgment, she expressly disclaimed "any interest in or entitlement to the addition to the Dowd home."

[7] The real estate was owned by Dowd as a tenant by the entirety with his wife. On the wife's death it passed by devise to six of the children, the seventh child not being named in the will. See G. L. c. 191, § 20.

26, 1982, the plaintiffs' motion for partial summary judgment and the defendants' motion for full summary judgment were denied. On November 9, 1982, the defendants' motion to dismiss under Mass.R.Civ.P. 12(b)(1), 365 Mass. 755 (1974), for lack of subject matter jurisdiction was denied. On motion of the defendants for rehearing, the same judge who had heard the original motion ordered dismissal of the action, and a judgment entered accordingly. The plaintiffs have appealed from that judgment.[8] In his memorandum of decision on rehearing, the judge concluded, on res judicata principles, that the judgment of January 14, 1982, of the Probate Court allowing the first and final guardianship account precluded the plaintiffs from litigating the issue raised in the Superior Court action.[9]

3. *The motions for relief from the Probate Court judgment allowing the first and final guardianship account.* At the threshold, we note that Mass.R.Civ.P. 72, 371 Mass. 910 (1977), expressly preserved the well-settled rule that judgments on probate accounts may be impeached only for fraud or manifest error. While making the provisions of rule 60 applicable to judgments on contested and uncontested accounts, rule 72(b)(4) & (7) provide that "the provisions of G. L. c. 206, § 24, shall govern the granting of any relief under Rule 60(b); and Rule 60(b)(3) shall not apply." The reopening of account proceedings, therefore, continues to be governed by the "fraud or manifest error" standard of G. L. c. 206, § 24, as appearing in St. 1950, c. 413, and the judicial construction of the terms. See Massachusetts Probate Manual, c. XII, at 22 (2d ed. MCLE

[8] The defendants filed a notice of appeal from the order denying their motion for summary judgment, conditioned on our reversal of the judgment of dismissal.

[9] The defendants' amended answer, filed after the denial of their motion for summary judgment, raised the affirmative defense of res judicata. See Mass.R.Civ.P. 8(c), 365 Mass. 750 (1974). It is generally appropriate to raise this defense in a motion for summary judgment under rule 56, 365 Mass. 824 (1974). See *Cousineau* v. *Laramee,* 388 Mass. 859, 860 n.2 (1983). The parties acknowledge that this should have been done in this case. To the extent that the defense may be raised in a motion to dismiss at all, it should have been raised by a motion under rule 12(b)(6). See *Boyd* v. *Jamaica Plain Co-op. Bank,* 7 Mass. App. Ct. 153, 157 n.7 (1979). For the same reasons expressed in *Boyd,* we treat the issue as properly raised.

1983). Of course, if it appears that notice was not given to an interested person as required by § 24, the proceedings "can be reopened in order to give him his day in court." *Azarian* v. *First Natl. Bank,* 383 Mass. 492, 494 (1981). *Porotto* v. *Fiduciary Trust Co.,* 321 Mass. 638, 642-643 (1947). See also *Child* v. *Clark,* 231 Mass. 3, 6 (1918) (intentional failure to name and give notice to interested persons constituted fraud); *O'Sullivan* v. *Palmer,* 312 Mass. 240 (1942) (same).

"To justify revocation of [a judgment] it is not enough to show that available evidence was not offered, that material contentions were not properly presented, or that the issues were not rightly decided." *Reynolds* v. *Remick,* 333 Mass. 1, 9 (1955). A court may correct manifest error in a judgment or revoke a judgment in which fraud either induced the court to take jurisdiction which it did not have or deprived an interested person of his day in court. *Id.* at 10. See *O'Brien* v. *Dwight,* 363 Mass. 256, 282, 285-289 (1973), and cases cited. See also *Naughton* v. *First Natl. Bank,* 4 Mass. App. Ct. 624, 628 (1976).[10]

We deal first with the motion of Christopher Morin's wife that the account proceedings be opened because neither she nor Christopher's minor children were given notice of the presentation of the account for allowance.[11] General Laws c. 206, § 24(3), provides that, in the case of accounts of guardians and conservators, notice must be given *"to the ward* and to the persons who would be his heirs were he to die intestate" at the time of the giving of the notice (emphasis supplied). The obvious purpose of the statute is to protect the interests of the persons likely to inherit the estate of one who may be under a legal disability in the event of death prior to the removal of the disability.[12] In this context the heirs might be thought to be

[10] Rule 72 changed the nomenclature in the case of accounts from "decree" to "judgment."

[11] This also is a ground of the "additional" motion of Christopher and Gregory for relief from judgment.

[12] The interests of a "legally incompetent" person are protected by the requirement of § 24 for the appointment of a guardian ad litem. Notice to the heirs presumptive may lead (but not inevitably) to additional protection of those interests.

in a position similar to those with contingent interests. Cf. *Young* v. *Tudor,* 323 Mass. 508, 511-512 (1948). Here, Christopher reached majority in 1969, and the guardianship then terminated as to him. The notice of presentation of the account was sent to him in 1981 at a time when he was no longer *the ward* and his heirs presumptive had no protectable interest under § 24. See Kehoe, Allowance of Probate Accounts, 59 Mass. L.Q. 315, 325-326 (1974); 2 Newhall, Settlement of Estates and Fiduciary Law in Massachusetts § 399, at 581 (4th ed. 1958).

Christopher and Gregory argue that the Probate Court judgment should be vacated because there was manifest error in the failure to give notice of the presentation of the account for allowance to their attorney, who, they say, had entered an appearance in the proceeding and was also a "person interested" within the meaning of G. L. c. 206, § 24. The argument on the first point is that since the attorney had entered an appearance on the petition to render the account, filed more than two years prior to the filing of the account and issuance of the notice, that act constituted an appearance in the proceedings on the allowance of the account. There is nothing in this. The proceeding on the petition to render terminated on the filing of the account. Indeed, there is no requirement in our statutes or practice which requires an accountant to present an account for allowance. See G. L. c. 205, § 1; c. 206, §§ 1, 23A; Uniform Probate Practice XVI C.; Massachusetts Probate Manual, *supra* at 4-5. The proceeding for the allowance of the account, although under the same docket number as is the custom in the Probate Court, was a new proceeding requiring a new appearance pursuant to rule 72(b)(1)(A). Surely, the appearance in the petition-to-render case cannot be regarded as an appearance in an action for the allowance of an account yet to be filed. Contrast *Dolan* v. *Roy,* 286 Mass. 519 (1934) (After an account had been filed, but before the citation, an attorney entered an appearance for an interested person. Later the attorney wrote to the court asking that the account be marked for hearing and requesting notice of the hearing date. The account was allowed without notice to the attorney or the

interested person.) The Morins' second contention is easily answered. For the reasons already stated, their attorney's appearance in the petition-to-render proceeding cannot be taken as a request "in writing for notice of proceedings on accounts" within the meaning of G. L. c. 206, § 24(5). Moreover, the attorney was not a "person interested" as that term is used in the statute. As we have said, the only "persons interested" were the former wards.

The Morins' argument that there was manifest error because schedule C of the account showed a zero balance is without merit. Upon receipt of the notice of presentment for allowance it was the Morins' "duty . . . to study the account presented to the Probate Court . . . and to make their objections at the hearing." *Greene* v. *Springfield Safe Deposit and Trust Co.*, 295 Mass. 148, 154 (1936). *Burlingham* v. *Worcester*, 351 Mass. 198, 202 (1966). *National Academy of Sciences, Inc.* v. *Cambridge Trust Co.*, 370 Mass. 303, 310 (1976).[13] Items 21 through 26 of the account clearly reported the funds expended to enlarge Dowd's home. Schedule C constituted a representation that there were no funds or investments belonging to the wards in the hands of the guardian as of the close of the final accounting period, March 1, 1971, the date of majority of the youngest ward. In the circumstances, there having been no objection, the Probate Court properly allowed the account, and the judgment may not now be vacated on the ground that "the issues were not rightly decided." *Reynolds* v. *Remick*, 333 Mass. at 9. Contrast *National Academy of Sciences, Inc.* v. *Cambridge Trust Co.*, *supra*.

Finally, the Morins' argument that the failure to notify the Morins' attorney somehow constituted fraud withers in the face of actual notice to the Morins of the presentation of the account for allowance.[14] We conclude that there was no error

[13] In accordance with rule 72(b)(1)(B), the notice stated that an interested person could obtain, by written request to the accountant or counsel, a copy of the account without charge. The Morins did not exercise that right.

[14] The Morins did not notify their attorney on receipt of the notice. They explain that in November of 1981 they received notice of presentation for allowance by the administrator with the will annexed of Dowd's estate of ac-

in the denials of the motions for relief from the judgment allowing the first and final account of the guardianship.

4. *The Superior Court judgment of dismissal.* The claims of Christopher and Gregory Morin to equitable interests in the Dowd real estate arise solely out of the expenditure of guardianship funds to enlarge the Dowd home. They do not argue that any action of the defendants created any such interests. The first and final account of the guardianship clearly set out the expenditures and, as of the date of termination, March 1, 1971, showed that the guardian held no assets of the former wards. We agree with the conclusion of the Superior Court judge that "[t]he allowance of the item[s] as . . . expenditure[s] [in schedule B] and the approval of the account as stated decisively establish that no ownership interest on behalf of [the Morins] was created." See G. L. c. 206, § 2.

We hold that under the doctrine of res judicata the Morins are barred by the judgment of the Probate Court allowing the guardianship account from litigating the issue raised in the Superior Court action.[15] "The doctrines of res judicata and collateral estoppel are most important in assuring that judgments are conclusive, thus avoiding relitigation of issues that were or could have been raised in the original action (res judicata) and of questions of law or fact necessary to the judgment in the original action (collateral estoppel)." *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.,* 387 Mass. 444, 449 (1982), and cases cited. The necessary elements "to preclude relitigation of an issue are 'identity of cause of action and

---

counts of Dowd's trusteeship under the will of the Morins' mother. Their attorney advised them that there was no point in responding because Dowd's estate was insolvent. When they received the notice on the guardianship account the Morins thought the same advice would be given.

[15] This case involves claim preclusion, not issue preclusion. Under the latter doctrine "[w]hen an issue of fact or law is *actually litigated* and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or a different claim" (emphasis supplied). *Cousineau* v. *Laramee,* 388 Mass. 859, 863 n.4 (1983), quoting from Restatement (Second) of Judgments § 27 (1982). See also *Foster* v. *Evans,* 384 Mass. 687, 696 (1981).

issues, the same parties, and judgment on the merits by a court of competent jurisdiction.'" *Almeida* v. *Travelers Ins. Co.,* 383 Mass. 226, 229-230 (1981), quoting from *Franklin* v. *North Weymouth Coop. Bank,* 283 Mass. 275, 280 (1933). *Fluhr* v. *Allstate Ins. Co.,* 15 Mass. App. Ct. 983, 984 (1983). A party cannot avoid the rule by attempting to relitigate a claim "from a different posture or in a different procedural form." *Wright Mach. Corp.* v. *Seaman-Andwall Corp.,* 364 Mass. 683, 688 (1974).

We have said in part 3 of this opinion that the Probate Court judgment was valid and final. The issue — whether the expenditure of guardianship funds to expand the Dowd home gave rise to equitable interests in the Morins — raised in the Superior Court action was determined adversely to the Morins by the Probate Court judgment. See *Almeida* v. *Travelers Ins. Co., supra* at 230. There can be no question of the jurisdiction of the Probate Court to make such a determination. See G. L. c. 206, § 4; *Cook* v. *Howe,* 280 Mass. 325 (1932). Any interest of the Morins in the Dowd real estate arose, if at all, at the time of the expenditure of guardianship funds, and it would be incumbent on the person rendering the account to state any undistributed interest of the wards in schedule C. The argument that this could not be done in this case because the real estate had passed to the defendants when the account was allowed is without merit. That may be a consideration with respect to the remedy but not with respect to the right. Finally, although the Dowd children, defendants in this action, were not parties to the Probate Court proceedings, they were successors in interest to the real estate in which the Morins claim equitable interests and were, therefore, entitled to invoke the doctrine of res judicata. See *Lyon* v. *Bloomfield,* 355 Mass. 738, 743 (1969).[16]

---

[16] The Superior Court judge did not reach, nor do we, the questions whether the Probate Court decree of June 25, 1964, authorizing the expenditure of guardianship funds would have precluded a challenge to the account or operate as a bar to this action. We note, however, that in the 1964 proceeding a guardian ad litem represented the interests of the wards and assented to the decree. See G. L. c. 201, § 34. We do not have a record of

The denials of the motions for relief from the Probate Court judgment allowing the first and final guardianship account are affirmed. The Superior Court judgment of dismissal is affirmed.

*So ordered.*

those proceedings, but it would seem likely that any possible interests of the wards in the real estate arising from the expenditure of their funds would have been addressed. It is clear that the issue *could* have been litigated. See *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. at 449.