Leonard J. ROSE, Plaintiff, Appellant,

v.

**TOWN OF HARWICH,**
Defendant, Appellee.

No. 85–1258.

United States Court of Appeals,
First Circuit.

Argued Sept. 9, 1985.

Decided Dec. 3, 1985.

Robert C. Hahn with whom William A. Hahn and Hahn & Matkov, Boston, Mass., were on brief for plaintiff, appellant.

Michael D. Ford with whom James M. Falla and Mycock, Kilroy, Green & McLaughlin, P.C., Boston, Mass., were on brief for defendant, appellee.

Before COFFIN, Circuit Judge, WISDOM,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

In December 1978 the appellant, Leonard J. Rose, brought suit in Massachusetts Superior Court, alleging that the town of Harwich, Massachusetts, had unlawfully taken a piece of his land. He lost the suit, basically because the relevant statute of limitations had run. He then filed this suit in federal court for the District of Massachusetts, essentially claiming that the town had taken his property without satisfying the procedures or paying him the just compensation that the Constitution requires. The district court held that res judicata barred this suit; and it granted summary judgment for the town. We affirm.

I

Rose is a merchant seaman who owns land in Harwich township on Cape Cod. On December 12, 1968, the town, using its eminent domain powers, recorded the taking of a parcel of land that Rose says was his. In 1969, the town took possession of

* Of the Fifth Circuit, sitting by designation.

the land and built a water tower on it. Evidently, town records did not make clear who owned the land, and the town did not give Rose notice of the taking. But eventually, in June 1977, Rose learned that the town had taken the property in question.

About eighteen months later, in December 1978, Rose brought suit against the town in Massachusetts state court. He sought damages for the taking, Mass.Gen. Laws ch. 79, § 14, and, in the alternative, a declaration that the taking had been unlawful and that he was therefore entitled to possession of the land. On June 23, 1980, the state court found against Rose, for three reasons. First, he had not offered any evidence of the value of the land. Second, he had not satisfied the statute of limitations that governs actions for damages under the Massachusetts eminent domain law. That statute says that a landowner like Rose, who has not received notice from the taking authority, must file suit within six months from "the taking possession of his property or the receipt by him of actual notice of the taking, whichever first occurs...." Mass.Gen.Laws ch. 79, § 16. The court adopted a "most liberal view" of this provision (construing it to have permitted suit within six months from the time of actual notice, irrespective of "possession"), but found that Rose had still filed a year too late. The court concluded that it was therefore "without jurisdiction to entertain [his] petition for damages." Third, in respect to Rose's request for declaratory relief, the court said that "the taking of the locus previously owned by plaintiff was legal and valid."

Rose subsequently asked the court to vacate its entry of judgment against him, to dismiss the case for lack of subject matter jurisdiction, and to vacate the opinion that accompanied the judgment. The court complied with the first two of these requests, but it denied the third. It subsequently refused to grant a "voluntary dismissal" of the suit. Rose did not appeal.

In January 1981, Rose filed the present 'civil rights' action in federal court. See 42

U.S.C. § 1983. He says that the Massachusetts eminent domain law's statute of limitations violates the Due Process Clause and the Just Compensation Clause of the federal Constitution. He adds that the town's "trespassory taking of and entry on plaintiff's land" has deprived him of "rights, privileges and immunities" secured by various provisions of the federal Constitution. He wants the federal courts to remove the cloud on title, to award him damages, and to enjoin "further trespass on plaintiff's land." As noted, the federal district court has granted the town summary judgment on grounds of res judicata; and Rose now appeals.

## II

The basic legal doctrine that governs this case is that of 'claim preclusion.' The *Restatement (Second) of Judgments* describes this aspect of res judicata as follows:

> A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.
>
> ....
>
> [T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Restatement (Second) of Judgments* §§ 19, 24(1) (1980). Massachusetts follows this traditional doctrine. *See Isaac v. Schwartz,* 706 F.2d 15, 16 (1st Cir.1983); *Boyd v. Jamaica Plain Co-operative Bank,* 7 Mass.App. 153, 386 N.E.2d 775, 781 (1979) (quoting tentative draft of *Restatement (Second)).* And, we must follow Massachusetts law. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 85, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (in § 1983 suit in federal court, prior state court judgment has same claim-preclusive effect it would have in state in which it was rendered). Unless Rose can fit his case within some exception to the general 'claim preclusion' rule, his

federal court claims are barred, for both his state court and his federal court claims grow out of the same "transaction, or series of connected transactions"—namely, the town's taking of his land and subsequent failure to give him notice or compensation. That is to say, Rose must find an exception freeing him from the legal doctrine against 'claim splitting'—the principle that requires a litigant to assert all his various legal theories and factually related allegations the first time he brings suit. *See Boyd,* 386 N.E.2d at 781. Rose argues for an exception on several different grounds.

1. Rose first notes that the state court purported to dismiss his suit for "lack of jurisdiction." In Massachusetts, as elsewhere, a judgment does not preclude future claims if not rendered "on the merits." *See Dowd v. Morin,* 18 Mass.App. 786, 471 N.E.2d 120, 125–26 & n. 15 (1984), *review denied,* 393 Mass. 1105, 474 N.E.2d 181 (1985). And, ordinarily a dismissal for "lack of jurisdiction" is not a judgment "on the merits." *See Wright Machine Corp. v. Seaman-Andwall Corp.,* 364 Mass. 683, 307 N.E.2d 826, 833 (1974); Mass.R.Civ.P. 41(b); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4436 (1981). Indeed, the *Restatement* itself says

> A personal judgment for the defendant ... does not bar another action by the plaintiff on the same claim:
>
> (a) When the judgment is one of dismissal for *lack of jurisdiction,* for improper venue, or for nonjoinder or misjoinder of parties....

*Restatement (Second) of Judgments* § 20(1) (emphasis added).

The word "jurisdiction," however, has a protean quality and can play different roles in different legal contexts. The *Restatement* means the word to refer to typical "jurisdictional" dismissals—where, for example, a plaintiff sues in the wrong court. Such dismissals are usually entered at the outset of a case. They rest upon the discovery of defects of a technical or procedural nature which, if cured, normally

ought not to bar a plaintiff from bringing the action again. Thus, the *Restatement* lists "lack of jurisdiction" together with other defects of this type, such as "improper venue" and defective joinder.

The state court, however, was not referring to this type of jurisdictional defect. It could not have meant the words "lack of jurisdiction" to signify that Massachusetts superior courts lack competence over eminent domain actions generally. *See* Mass. Gen.Laws ch. 79, § 14. Nor did it mean that the plaintiff should have applied to some other court for relief. Rather, the court used the term "lack of jurisdiction" to mean that the statute of limitations had run. Its initial opinion explained that the *statute of limitations* left it "without jurisdiction" to entertain Rose's petition for damages. *See Wine v. Commonwealth,* 301 Mass. 451, 455–56, 17 N.E.2d 545 (1938); *Whitehouse v. Town of Sherborn,* 11 Mass.App. 668, 419 N.E.2d 293, 297 (1981). And, Massachusetts precedent reveals that its courts describe a statute of limitations as defeating "jurisdiction" when that statute is incorporated into a substantive statute (in this case, the eminent domain law), so as to extinguish not only the plaintiff's "remedy" in the Massachusetts courts but also the underlying substantive "right." *See Jordan v. County Commissioners,* 268 Mass. 329, 333, 167 N.E. 652 (1929) ("As the statute 'is a limitation of the right as well as a limitation of the remedy' the trial court had no jurisdiction to entertain the petition....") (citation omitted); *see also Wine,* 301 Mass. at 455–56, 17 N.E.2d 545; *L'Huilier v. City of Fitchburg,* 246 Mass. 349, 352, 141 N.E. 122 (1923). Presumably, this is why the state court, despite its use of the word "jurisdiction," refused to grant Rose's motion for "voluntary dismissal" and so declined the opportunity to dismiss Rose's initial action "without prejudice." *See* Mass.R.Civ.P. 41(a).

■ The question for us, therefore, is not about "jurisdictional" dismissals; rather, it is whether Massachusetts would consider a dismissal based on this particular limitations provision to be a dismissal "on the merits." After examining the case law in some detail, we conclude that Massachusetts would treat this particular limitations-based dismissal as one with claim-preclusive effect.

For one thing, our survey of recent cases suggests a clear trend toward giving claim-preclusive effect to dismissals based on statutes of limitations. *See, e.g., Nilsen v. City of Moss Point,* 701 F.2d 556, 562 (5th Cir.1983) (en banc); *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 896 (2d Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *Ellingson v. Burlington Northern, Inc.,* 653 F.2d 1327, 1330 n. 3 (9th Cir.1981); *Nathan v. Rowan,* 651 F.2d 1223, 1226 (6th Cir.1981); *Chang v. Northwestern Memorial Hospital,* 549 F.Supp. 90, 93–96 (N.D.Ill.1982); *Haefner v. County of Lancaster,* 543 F.Supp. 264, 266 (E.D.Pa.1982), *aff'd mem.,* 707 F.2d 1401 (3d Cir.1983); *Smith v. Russell Sage College,* 54 N.Y.2d 185, 429 N.E.2d 746, 750, 445 N.Y.S.2d 68 (1981).

For another thing, the cases that deny claim-preclusive effect to limitations-based dismissals do so for a conceptual reason not here applicable. These cases rest upon the traditional distinction between "right" and "remedy" and the traditional assertion that a "procedural" statute of limitations extinguishes only the "remedy" not the "right." *See, e.g., Henson v. Columbus Bank & Trust Co.,* 651 F.2d 320, 324–25 (5th Cir. Unit B 1981); *Hartmann v. Time, Inc.,* 166 F.2d 127, 138–39 (3d Cir.), *cert. denied,* 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948); *Cummings v. Cowan,* 390 F.Supp. 1251, 1255 (N.D.Miss.1975); *Textron, Inc. v. Whitfield,* 380 So.2d 259, 260 (Ala.1979) (per curiam). According to this view, a typical statute of limitations might, for example, extinguish the plaintiff's "remedy" in State A, but would not in itself necessarily stop him from enforcing his substantive "right" in State B, which may apply a different limitations provision. *See* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.409[6], at 334–35 (2d ed. 1984); *see also Keeton v.*

*Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 1480 n. 10, 79 L.Ed.2d 790 (1984) (noting criticism of this conception of statutes of limitations).

In this case, however, Massachusetts would not see the limitations statute at issue as "procedural." Its courts have authoritatively construed that statute to extinguish the "right" as well as the "remedy." *See* cases cited *supra*. Thus, even if Massachusetts would deem the "right"/"remedy" distinction relevant in determining the preclusive effect of limitations-based dismissals, the decisions based on that distinction do not help Rose here. *See also Santos v. Todd Pacific Shipyards Corp.*, 585 F.Supp. 482, 485–86 (C.D.Cal. 1984) (second action precluded where limitations provision "bars the plaintiff's substantive rights"); *Weinberg v. Johns-Manville Sales Corp.*, 299 Md. 225, 473 A.2d 22, 31 & n. 12 (1984) (second action precluded where prior judgment "affected the cause of action"); 1B *Moore's Federal Practice, supra*, ¶ 0.409[6], at 334–35 ("[W]here the statute operates as a limitation on the right ..., a judgment dismissing an action because it is barred bars a new suit on the same cause of action in any jurisdiction.").

Moreover, the Massachusetts case closest to the point, while not dispositive, supports claim preclusion in this case. *See Fluhr v. Allstate Insurance Co.*, 15 Mass. App. 983, 447 N.E.2d 1254 (1983) (giving preclusive effect to prior judgment based on a limitations provision that appeared not only in a statute but also in the contract on which the action was based). And, the case on which Rose puts primary emphasis, *Hernandez Jimenez v. Calero Toledo*, 576 F.2d 402 (1st Cir.1978), is weak as authority. *Hernandez* involved a plaintiff's failure to seek court review of an administrative agency decision within the thirty days fixed by local statute. This court held that Puerto Rico's dismissal of the court review proceeding for tardiness did not preclude a later civil rights suit in federal court. *See id.* at 404. But, a thirty-day time limit on bringing an appeal is a more technical, procedural rule than the substance-oriented limitations provision here in question.

*Compare Loudermill v. Cleveland Board of Education*, 721 F.2d 550, 558 (6th Cir. 1983) ("[A] statute of limitations ... may be viewed as a defense on the merits, [but] requirements to perfect an appeal reflect institutional limitations on the power of a court."), *aff'd on other grounds*, —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *cf. United States v. Oregon Lumber Co.*, 260 U.S. 290, 299, 43 S.Ct. 100, 102, 67 L.Ed. 261 (1922); *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). And, in any event (as far as we can tell), Puerto Rico's law may not have required the *Hernandez* plaintiff to assert his federal liability claims at the same time when, and in the same court where, he sought judicial review of the agency decision.

Finally, to hold that the state court dismissal was not "on the merits" would directly undercut the policy underlying the limitations provision built into the Massachusetts eminent domain statute. That policy (of 'extinguishing the right') is not consistent with a once-tardy plaintiff bringing a second action (say, in another state).

In sum, we hold that Massachusetts would not consider the limitations-based dismissal of Rose's original action to fall within the "lack of jurisdiction" exception to the general 'claim preclusion' rule. Rose might see an irony here: the very fact that the Massachusetts court used the word "jurisdiction" reinforces our conclusion that its limitations-based dismissal is *not* a "lack of jurisdiction" dismissal for purposes of *Restatement* § 20(1)(a). Any irony, however, is purely semantic. Once one looks past the labels, both the limitations statute's policy and the case law support the application of basic 'claim preclusion' principles in the case before us.

2. Rose, noting that claim preclusion is an equitable doctrine, *see Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 873 (1st Cir.1971), argues for another exception, to be made on grounds of 'equity.' He says that it is outrageous for the town to take his property while

paying him nothing, particularly since he received actual notice late in the day and since he is a merchant seaman who cannot keep constant watch over his property.

In essence, Rose is arguing that he has a meritorious claim and that it is thus unfair to deny him relief. But if courts relaxed the principles of claim preclusion every time it appeared that a litigant had a strong claim 'on the equities,' the doctrine would fail to serve its purposes of promoting judicial economy and repose. In some individual instances a fairer result might be achieved, but more often the litigation of stale claims and the resulting uncertainty would mean injustice or hardship. For this reason, the Supreme Court has instructed us not to stray from traditional principles of res judicata by making any "ad hoc determination of the equities in a particular case." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981).

■ If, as the *Restatement* suggests, there may nonetheless be an occasional exception to prevent unusual hardship, this case does not fall within it. This is not a case in which the plaintiff has "clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason...." *Restatement (Second) of Judgments* § 26(1)(f). Rose filed his original action nearly eighteen months after he received notice of the 'taking,' and roughly nine years after the water tower went up on the property he claims was his. Thus, even if we assume, purely for argument's sake, that the Massachusetts statute of limitations would offend the Constitution if applied literally, Rose himself was not treated with extreme unfairness insofar as that statute was applied to him. Nor is this a case in which the state court's decision was "plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme." *Restatement (Second) of Judgments* § 26(1)(d).

■ In a variation of his 'equity' theme, Rose says that the town has "unclean hands." This seems to us merely another way of saying, "The defendant has committed a wrong and therefore res judicata should not apply." We are unaware of any instance in which a court has recognized so potentially sweeping an exception to the general rule of claim preclusion. And, to recognize it in this case would run counter to the Supreme Court's admonition in *Moitie, supra.* We therefore must apply the general rule.

■ 3. Rose further argues that his complaint states a cause of action for "continuing trespass" and that claim preclusion does not apply where the challenged conduct is "continuing." *See Schneider v. Colegio de Abogados de Puerto Rico,* 546 F.Supp. 1251, 1272 (D.P.R.), *mandamus granted in part and denied in part sub nom. In re Justices of Supreme Court of Puerto Rico,* 695 F.2d 17 (1st Cir.1982). Insofar as this proposition springs from the notion that claim preclusion does not apply when the plaintiff's second suit grows out of facts not in existence at the time of the first, *see, e.g., Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 328, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955) (relied on in *Schneider,* 546 F.Supp. at 1272), it is inapplicable here. Rose has given us no reason to believe that the legality of the town's actions depends on anything that has happened since the state court dismissed his original suit. Insofar as Rose's argument reflects the theory that a plaintiff should be able to bring successive actions to recover continuing damages as they accrue, *see Restatement (Second) of Judgments* 26(1)(e) & comments f–h (1980), it is also inapplicable. Rose is not suing in federal court to recover damages that have accumulated since his suit in state court; rather, he is seeking a second chance to establish the illegality of events that occurred more than fifteen years ago.

## III

■ Finally, Rose claims that the district court erred in granting summary judgment for the town despite the town's failure to move for it. We agree with the district

court that it had discretion to enter summary judgment for a nonmoving party. *See Ziviak v. United States*, 411 F.Supp. 416 (D.Mass.), *aff'd mem.*, 429 U.S. 801, 97 S.Ct. 36, 50 L.Ed.2d 64 (1976); 6 *Moore's Federal Practice, supra,* ¶ 56.12.

We find Rose's remaining legal arguments without merit. The most we can say for Rose is to point out, as Massachusetts courts have done, the possibility of legislative relief through a private bill. It is "open to the Legislature to determine that just compensation, notwithstanding a technical default, would rectify an apparent injustice, satisfy a quasi-moral obligation, contribute to public confidence in government, and serve the public good." *Sullivan v. Commonwealth*, 365 Mass. 316, 311 N.E.2d 552, 554 (1974).

The judgment of the district court is *Affirmed.*