RAYMOND BOURQUE *vs.* CAPE SOUTHPORT ASSOCIATES, LLC.

No. 01-P-1590.

Barnstable. September 11, 2003. - January 5, 2004.

Present: CYPHER, COWIN, & MILLS, JJ.

*Arbitration,* Issue preclusion. *Judgment,* Preclusive effect. *Real Property,* Purchase and sale agreement. *Contract,* Interference with contractual relations. *Unlawful Interference. Collateral Estoppel.*

An arbitration proceeding between the seller and buyer in a failed real estate transaction, in which the arbitrator determined that the seller had accurately calculated the purchase price pursuant to a formula contained within the purchase and sale agreement and that the buyer had breached the purchase and sale agreement by failing to tender the purchase price in a timely fashion, did not preclude the plaintiff, who had lent the buyer the deposit and who held an option to lend the buyer the amount necessary to finance the entire project, from bringing an action against the seller for intentional interference with contractual or advantageous relations and violations of G. L. c. 93A, where the plaintiff was not a party to the arbitration proceeding, and where no privity existed between the plaintiff and the buyer in the arbitration proceeding, in that the plaintiff did not exercise substantial control over the buyer in the earlier proceeding and the buyer did not virtually represent the plaintiff in that proceeding. [273-277]
In a civil action alleging intentional interference with contractual or advantageous relations and violations of G. L. c. 93A, the judge properly granted summary judgment in favor of the defendant, who was the seller in a failed real estate transaction with a third party buyer, where the plaintiff, who had lent the buyer the deposit and who held an option to lend the buyer the amount necessary to finance the entirety of its proposed real estate development project, set forth no evidence in the summary judgment materials that the seller acted as it did for reasons related to the plaintiff's opportunity to finance the buyer's acquisition if it were consummated. [277-278]

CIVIL ACTION commenced in the Superior Court Department on July 7, 2000.

The case was heard by *Richard F. Connon,* J., on a motion for summary judgment.

*Michael D. Riseberg (Jeffrey Rotella* with him) for the plaintiff.

*Steven P. Perlmutter* (*Michael D. Lurie* with him) for the defendant.

Cowin, J. Unable to close on a planned acquisition of a real estate development project in Mashpee, thereby suffering the loss of a deposit of $1.5 million, the buyer, SOP Acquisition Corp. (SOP), alleged that the seller, the defendant Cape Southport Associates, LLC (CSA), had improperly withheld information necessary to calculate the purchase price, and SOP demanded arbitration pursuant to a provision of the purchase and sale agreement. The arbitration was conducted, and an arbitrator concluded that the defendant had accurately calculated the purchase price and that SOP had breached the purchase and sale agreement by failing to tender the purchase price in a timely fashion. Subsequently, the plaintiff, Raymond Bourque, frustrated by the above events in his expectation that he would lend SOP the amount necessary to acquire the property, commenced this action against CSA, asserting both intentional interference with contractual or advantageous relations and violations of G. L. c. 93A, §§ 2 and 11. A judge of the Superior Court entered summary judgment[1] in favor of the defendant on the ground that the plaintiff's claims were precluded by the result of the arbitration. The plaintiff appeals, arguing that he should not be bound by the decision in an arbitration in which he was not a party, and that there are genuine issues of material fact that make summary judgment improper. We agree that the arbitration decision does not have preclusive effect on the plaintiff's claims. However, we conclude that the plaintiff has not offered evidence sufficient to make out either a case of tortious interference or a violation of G. L. c. 93A, and therefore affirm the judgment on this ground.

1. *Material facts.* Except where otherwise indicated, the following facts gleaned from the record on summary judgment are undisputed. On December 23, 1997, SOP executed an agreement with the defendant, whereby SOP received an option to purchase all of the defendant's right, title, and interest in a real estate development project on land located in Mashpee. SOP could exercise its option on or before December 31, 1999, by

---

[1]The defendant had filed a motion to dismiss, or, in the alternative, for summary judgment.

executing a purchase and sale agreement attached to the option agreement and delivering it, along with a deposit of $1.5 million, to the defendant. On December 30, 1999, Robert Bradley, the principal of SOP, entered into a written agreement with the plaintiff in which the plaintiff agreed to lend SOP and Bradley the $1.5 million deposit required in order to exercise the option. In exchange, SOP agreed to pay the plaintiff interest on the loan and to provide the plaintiff with an opportunity, if he desired, to finance SOP's purchase of the entire project. On the following day, SOP exercised the option by signing the purchase and sale agreement and delivering it to CSA with a deposit of $1.5 million. The purchase and sale agreement established a closing date of January 31, 2000, and contained a formula for calculating the price SOP would pay for the project.

Following its exercise of the option, SOP asserted that the defendant failed to provide it with sufficient information to determine whether the proposed purchase price was properly calculated according to the formula contained in the purchase and sale agreement. Because of this, Bradley informed the plaintiff that he did not agree with the purchase price, and directed the plaintiff not to advance the closing funds. In addition, SOP demanded arbitration on the subject.[2] On January 31, 2000, SOP appeared at the closing without funds; as a result, the defendant retained and claimed the $1.5 million deposit. The plaintiff thereafter commenced this proceeding.

2. *Issue preclusion.* " 'Issue preclusion' . . . prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988). See Restatement (Second) of Judgments § 27 (1982). It differs from "claim preclusion," which "prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies." *Heacock* v. *Heacock, supra.* Here, the judge treated the defense as one of "claim preclusion," apparently determining that the result of the arbitration, favorable to the defendant, banned all subsequent claims by

---

[2]As indicated above, the arbitrator ultimately found in favor of the defendant.

SOP or its privies that turned on an allegation that the defendant had breached the purchase and sale agreement or any implied covenant thereof. It may be that the doctrine of "issue preclusion" is more applicable, given that the plaintiff's claims for tortious interference and violation of G. L. c. 93A are conceptually different from the claims for breach of contract, including breach of the implied covenant of good faith and fair dealing, asserted by SOP in the arbitration. The distinction, however, is not determinative in the present case. By whatever avenue, the judge ruled that the arbitrator's decision in favor of CSA on SOP's contract claims was binding on the plaintiff as privy of SOP, and it is that decision that we review.

Preclusive effect is not limited to court proceedings; it arises in the same manner from arbitrations. See *TLT Constr. Corp.* v. *A. Anthony Tappe & Assocs.*, 48 Mass. App. Ct. 1, 4-10 (1999); Restatement (Second) of Judgments § 84. One who is not a party to the arbitration may use the arbitration award to bind his adversary in a later proceeding if, inter alia, that adversary or his privy was a party to the arbitration and had a "full and fair opportunity to litigate the issue." *Bailey* v. *Metropolitan Property & Liab. Ins. Co.*, 24 Mass. App. Ct. 34, 37 (1987). The question in the present case is whether the result of an arbitration may have preclusive effect against, as well as in favor of, a nonparty to the arbitration proceeding.

For preclusive effect to flow from a prior judgment, the party against whom preclusive effect is asserted must have been either a party in the prior case or in privity with a party. See *Commissioner of the Dept. of Employment & Training* v. *Dugan*, 428 Mass. 138, 142 (1998) (issue preclusion, where the party against whom preclusion is asserted was a party, or in privity with a party, to the prior adjudication); *Gloucester Marine Rys. Corp.* v. *Charles Parisi, Inc.*, 36 Mass. App. Ct. 386, 390 (1994) (claim preclusion, in which there must be "identity or privity of the parties to the present and prior actions"). The examination essentially reduces itself to an inquiry whether the party against whom preclusion is asserted participated in the prior proceeding, either himself or by a representative.

There may be a finding of privity between SOP and the plaintiff if the plaintiff, the party in the present action, exercised

"substantial control" over SOP in the prior action. See Restatement (Second) of Judgments § 39. While there exists "no bright-line test for gauging substantial control," the evidence must show that the party to the present action "possessed effective control over a party's conduct of the earlier litigation as measured from a practical, as opposed to a purely theoretical, standpoint." *Gonzalez* v. *Banco Central Corp.*, 27 F.3d 751, 759 (1st Cir. 1994) (plaintiffs in a later litigation did not exert substantial control over the plaintiffs in an earlier litigation despite the fact that the two proceedings involved overlapping claims arising out of the same acts of the defendant, the two sets of plaintiffs had the same legal representation, and the two sets of plaintiffs intentionally used some of the same discovered materials in the respective proceedings). In this case, the defendant has offered no evidence that suggests that the plaintiff exercised any control over SOP in the arbitration proceedings. It follows that no privity for purposes of issue preclusion can be based, in this case, on the substantial control doctrine.

The fact that the plaintiff and SOP shared an interest in proving or disproving some of the same facts does not establish that privity existed between them for purposes of issue preclusion. See *Massachusetts Property Ins. Underwriting Assn.* v. *Norrington*, 395 Mass. 751, 754 (1985) (finding in a criminal case that the insured intended to cause the victim's death did not preclude a nonparty's right to prove in a later coverage action that the insured did not intend the victim's death). Nor is the contractual relationship that existed between the plaintiff and SOP enough by itself to create privity between them for issue preclusion purposes. *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 249-250 (1980) (real estate purchaser's prior action against the sellers did not preclude the purchaser's later action against the broker, despite the fact that a contractual relationship existed between the sellers and the broker).

The defendant argues that the plaintiff is precluded from bringing the action at issue because he was "virtually represented" by SOP in the arbitration proceedings. While the judge did not base his decision in the defendant's favor on this theory, the defendant asserts the principle as an alternative basis on which to uphold the decision below. Massachusetts courts

have indeed applied the doctrine of virtual representation in various contexts. See, e.g., *Matter of the Liquidation of Am. Mut. Liab. Ins. Co.*, 417 Mass. 724, 735 n.8 (1994); *Boyd* v. *Jamaica Plain Co-op. Bank*, 7 Mass. App. Ct. 153, 158-159 (1979). This case, however, lacks those features that have been present in cases where virtual representation has been applied. See *Boyd* v. *Jamaica Plain Co-op. Bank*, *supra*, in which one group of mortgagor plaintiffs was determined to have "virtually represented" another group of mortgagor plaintiffs, where the latter group allowed their case to be subsumed in the former plaintiffs' prior "pilot" case, thus casting their lot with the former plaintiffs as to litigation of all liability issues presented, finally determined, and essential to judgment in the pilot case. See also Restatement (Second) of Judgments § 41. The burden of proving that SOP virtually represented the plaintiff in the arbitration proceeding lies with the defendant. See *Gonzalez* v. *Banco Central Corp.*, *supra* at 761. Even were the defendant to establish that the plaintiff and SOP had a business relationship; that they shared an interest in showing that it was the defendant who breached the purchase and sale agreement with SOP; and that the plaintiff had notice of the arbitration proceeding, such showings are insufficient to demonstrate that virtual representation took place in the arbitration. Nor did the plaintiff's attorney's presence at some of the arbitration proceedings bind the plaintiff to the arbitration decision. See *Pioneer Insulation & Modernizing Corp.* v. *Lynn*, 331 Mass. 560, 563 (1954).

The contexts in which virtual representation has been recognized differ considerably from the circumstances in the present case. See, e.g., *Morganelli* v. *Building Inspector of Canton*, 7 Mass. App. Ct. 475, 481-485 (1979). There we concluded that the town building inspector had virtually represented the town citizens' interests in an earlier action brought to enforce zoning by-laws where the applicable statute dictated that the building inspector enforce the zoning by-laws for the town and that the town citizens first apply to the building inspector to enforce the zoning by-laws on their behalf. Clearly SOP cannot be said to have represented the plaintiff's interests in the arbitration proceeding in such a fashion; it follows that privity between the plaintiff and SOP cannot be established by virtual representation.

"It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 327 n.7 (1979). Without privity between the party to the prior action and the party to the present action against whom issue preclusion is being sought, issue preclusion is not possible. See *Gloucester Marine Rys. Corp.* v. *Charles Parisi, Inc.*, 36 Mass. App. Ct. at 390. Because no privity between the plaintiff and SOP existed here, either by reason of virtual representation or otherwise, issue preclusion cannot bar the plaintiff's claims. It is therefore unnecessary to address the question whether the plaintiff's issues were decided by the arbitrator or were necessary to his decision.

3. *Tortious interference.* While we have concluded that the plaintiff is not barred by the result of the arbitration from asserting his tortious interference and G. L. c. 93A claims, it remains to be determined whether the summary judgment record contains sufficient evidence to warrant the submission of either claim to a fact finder. Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991); Mass.R. Civ.P. 56(c), 365 Mass. 824 (1974). A party opposing a motion for summary judgment may not rest on the allegations contained in his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e). The moving party is entitled to summary judgment where "the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, *supra* at 716.

To survive summary judgment on his claim of intentional interference with contractual or advantageous relations, the plaintiff must proffer admissible evidence sufficient to warrant findings that establish "(1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the [defendant's] knowledge of the contract or business relationship; (3) the [defendant's] intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." *Swanset Dev. Corp.* v.

*Taunton*, 423 Mass. 390, 397 (1996). See *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 812, 815-817 (1990). See also *Melo-Tone Vending, Inc.* v. *Sherry, Inc.*, 39 Mass. App. Ct. 315, 316 (1995) (emphasizing that improper motive or improper means is a necessary element of tortious interference). Something more than intentional interference is required. See *United Truck Leasing Corp.* v. *Geltman, supra* at 815-816.

Examining the plaintiff's showings in opposition to the defendant's summary judgment motion, we conclude that the plaintiff has no reasonable expectation of proving the essential elements of the tort of intentional interference with contractual or advantageous relations. What the plaintiff seeks to litigate is largely the question whether CSA breached its obligations to SOP under the purchase and sale agreement. In this regard, the plaintiff offers the deposition testimony of SOP's Robert Bradley that the defendant failed to provide SOP with sufficient information to determine whether the purchase price was accurate, thus bringing about SOP's failure to close and frustrating the plaintiff's contractual right to finance SOP's acquisition. Likewise, Bradley's testimony that he was "stonewalled" in trying to gain information to determine the accuracy of the purchase price bears on the contention that the defendant breached its contract with SOP. However, the plaintiff has set forth no evidence that the defendant acted as it did for reasons related to the plaintiff's opportunity to finance SOP's acquisition if it were consummated. There is no indication that the defendant acted for any purpose other than the protection of its own business interests in its dealings with SOP. That the plaintiff's business opportunity may have been affected indirectly does not render the defendant's actions tortious. Accordingly, we are left with no genuine issue of material fact with regard to the claims of intentional interference with contractual or advantageous relations, and summary judgment for the defendant on those claims was appropriate.[3]

*Judgment affirmed.*

---

[3]Because the plaintiff's claim under G. L. c. 93A is dependent on his claims of tortious interference, summary judgment on the c. 93A claim is appropriate as well.