Connors, Thomas A., J.
The present action commenced when the plaintiff, Thrifty Financial Services, Inc. (“Thrifty”), filed a four-count complaint against defendant Peoples Service Insurance Company (“Peoples”), alleging improper use of and failure to remit return premiums.[2] Peoples responded to the claim and asserted a five-count counterclaim against Thrifty.[3] In addition, Peoples asserted a third-party claim against the remaining defendants, seeking contribution for or indemnity from Thrifty’s claim. Thrifty now moves this court to grant partial summary judgment as to liability on all counts in the complaint and counterclaim.[4]
For the reasons that follow, the plaintiffs motion for summary judgment is ALLOWED IN PART, only as to each of the counterclaims brought against it. Thrifty’s motion for summary judgment on its claims against Peoples is DENIED, and pursuant to Rule 56(c), the court ORDERS that summary judgment enter on behalf of the defendant on each of Thrifty’s claims against it.

Background

The present suit concerns 86 insurance policies in which Thrifty financed premiums paid by insurance applicants to Peoples.[5] Peoples provides applicants, who would otherwise be unable to obtain insurance, motor vehicle liability insurance in accordance with Massachusetts General Laws. For a variety of reasons set forth later in this decision, Peoples determined that the insureds in question required prepayment of the full premium prior to issuing insurance. In the event that a policy was cancelled, prior to the end of the year, however, the right to the balance of the insured’s pre-paid premium (the “return premium”) accrued to the insured or its assignee.
Thrifty loaned the applicants the full insurance premium amount, and under its note with the insured, it was entitled to a yearly interest rate, a finance charge, several additional fees, and the assignment of the insured’s right to any return premiums.[6] This relationship between Thrifty and the insured amounted to a typical lender-borrower relationship under the promissoxy note.
In the present case, Peoples modified some of the 86 policies to increase coverage and, therefore, increase the overall premium. These modifications were made for various reasons: additional vehicles, additional operators, change of locations, and change of the operator ratings. The payments for the increased premium were deducted from the premium provided by Thrifty, which resulted in the depletion of that premium during the term of the pre-modified policy. At the heart of its claim is Thrifty’s allegation that this practice of deducting increased payments from premi *200 ums resulted in a wrongful reduction in the amount of the return premiums where policies had been can-celled prior to the end of the policy’s life.
Thrifty now moves this court for summaiy judgment on its claims against Peoples. Thrifty is seeking damages for wrongful conversion and violation of G.L.c. 175, §187B. In addition, Thrifty seeks, by way of declaratory relief, to prevent Peoples from deducting increased premium payments from pre-determined premiums. Finally, Thrifty also is seeking damages under G.L.c. 93A, alleging unfair and deceptive acts and practices, and it is moving for summary judgment on Peoples’ counterclaims.

Ruling

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(e); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitles it to judgment as a matter of law. Pederson v. Time, Incorporated, 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corporation, 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corporation, 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. The nonmoving party cannot defeat amotion for summary judgment by resting on his pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank, 369 Mass. at 553. Summaiy judgment may be rendered against the moving party when it is appropriate to do so. Mass.R.Civ.P. 56(c); Locator Services Group v. Treasurer and Receiver General 443 Mass. 837, 851 (2005).

I. Thrifty’s Claims A. Wrongful Conversion (Count I)

The first count of the complaint alleges that Thrifty was contractually entitled to return premiums based on the original premium amount financed without deductions for increased premiums resulting from subsequent coverage increases. Thrifty alleges that Peoples wrongfully converted the amounts due it as return premiums in order to pay for these increases. “The elements of conversion require that a defendant be proved to have ‘intentionally or wrongfully exercised] acts of ownership, control or dominion over personal property to which he has no right of possession at the time.’ ” Bleicken v. Stark, 61 Mass.App.Ct. 619, 622 n.2 (2004), quoting Abington National Bank v. Ashwood Homes, Incorporated, 19 Mass.App.Ct. 503, 507 (1985); Grand Pacific Finance Corporation v. Brauer, 57 Mass.App.Ct. 407, 412 (2003). In the present case, Thrifty has failed to demonstrate that Peoples’ possession of the return premium amounted to a wrongful conversion.
Although Thrifty did stand in the place of the insured, as assignees, for any return premium on the policy, Peoples had no contractual relationship with Thrifty. Thrifty provided a loan to the insured, who in turn contracted with Peoples for insurance. “The deliveiy of a premium financing note by an insured . . . is presumed to have constituted payment of the premium . . . and the note must therefore be considered the property of the [insurance] company.” New England Acceptance Corporation v. American Manufacturers Mutual Insurance Company, 4 Mass.App.Ct. 172, 180 (1976). At the time Peoples deducted the increased premium payments from the premium supplied by Thrifty to the insured, the premium belonged to and was in the control of Peoples. Therefore the premium was not Thrifty’s property, and its retention by Peoples did not constitute conversion of property.

B. Violation of G.L.c. 175, §187B (Count II)

Thrifty additionally asserts that it is entitled, as a financing entity, to maintain a cause of action which arises under Massachusetts law. G.L.c. 175, §187B; Commonwealth Automobile Reinsurers Rule 13; Massachusetts Private Passenger Automobile Insurance Rule 14. Specifically, Thrifty alleges that G.L.c. 175, §187B, which assigns criminal penalties for the failure to remit return premiums, provides it a right to maintain a cause of action. Second, Thrifty alleges that Commonwealth Automobile Reinsurers Rule 13 imposes a duty upon Peoples, which Peoples has breached, thereby creating a corresponding cause of action. Finally, Thrifty cites Peoples’ alleged violation of Rule 14 of the Massachusetts Private Passenger Automobile Insurance Manual, asserting that this also provides it a right to bring suit.[7]
Massachusetts General Laws c. 175, §187B provides for criminal penalties for the failure of an insurance company to remit a return premium to the insured, his agent, or assignee. Under this law, insurance companies must remit return premiums upon the cancellation of the policy. G.L.c. 175, §187B. The statute does allow, however, for the application of the return premiums to any debt on other policies, provided that the application does not invalidate an assignment of a right to the return policy.[8] Thrifty suggests that G.L.c. 175, §187B, should be read to prevent the application of a premium to debt owed *201 under the same policy because §187B prevents the application of a premium to debt owed on a second policy where that application would interfere with the rights of an assignee. For Thrifty’s interpretation to prevail, the word “other” would have to be read out of the phrase “on any other policy.” Under Massachusetts Law every statutory word must be given effect. Kobrin v. Gastfriend, 443 Mass. 327, 332 (2005) (“None of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute . . .”) (citations omitted); Matter of Yankee Milk, Incorporated, 372 Mass. 353, 358 (1977) (stating that “every word in a statute should be given meaning”). The statute simply cannot be read to prohibit the application of a premium to the policy which it was designated for, and therefore Peoples’ practice does not violate the provisions of G.L.c. 175, §187B.
In addition, Thrifty points to Commonwealth Automobile Reinsurers Rule 13, which governs the duties of servicing carriers such as Peoples. These duties include verification of representations contained in the application for insurance, implementation of procedures to assure collection of premiums billed, and compliance with the terms and conditions of premium finance notes. Thrifty suggests that Peoples is in violation of the direction to assure collection of premiums because the subjects insured under the 86 policies at issue defaulted on their premiums. The implication of this argument is that the instruction to implement procedures to assure collection of premiums billed must be read as an absolute mandate that companies never permit any action which could increase the risk of an insured’s default under the policy..Moreover, Thrifty also reads into this clause the creation of an independent cause of action benefitting a finance company when an insured defaults on payments to the insurance company. “The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction.” Unitrode Corporation v. Dynamics Corporation of America, 379 Mass. 487, 491-92 (1980) (requiring “clear legislative intention as to the creation by implication of new causes of action”) (citations omitted); see also Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 544 (1998) (“we have generally been reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference”). There is no evidence that the language contained in Rule 13 mandates that an insurance company prevent all defaults, nor does it in any way amount to evidence of a clear legislative intent which creates a private cause of action based on Rule 13B.3(f).
Thrifty finally argues that its position finds support in Rule 14 of the Massachusetts Private Passenger Automobile Insurance Manual. In Rule 14, the “Deposit Premium Rule,” a company “may” require a premium prior to the issuance of a policy. In the case of an applicant who has been in default for any premium in the preceding 24 months, Rule 14 allows the company to demand the entire premium charge in advance. The same point is reinforced in Rule 15 of the Commonwealth Automobile Reinsurers Manual, titled “Premium Collection Standards,” which provides that “[a]ny eligible risk that had been cancelled for nonpayment of insurance premiums during the preceding twenty-four (24) months may be required to pay 100% of the policy premium before insurance is bound . . .” Commonwealth Automobile Reinsurers Rule 15 (emphasis added). In both rules, however, any requirement that an applicant prepay a portion or the whole of a premium is left to the discretion of the insurance company. Peoples therefore did not violate either Rule 14 of the Massachusetts Private Passenger Automobile Insurance Manual or Rule 15 of the Commonwealth Automobile Reinsurers Manual when it determined that additional prepayment from the Insured was not necessaiy.
There is no evidence that Peoples was in violation of any of the laws enumerated by Thrifty. Furthermore, there has not been sufficient evidence that any of these rules or laws give rise to an independent cause of action. Therefore, summary judgment against Thrifty on this claim is appropriate.
C. Violation of G.L.c. 93A (Count IV)
Thrifty alleges that the practice of deducting increased premium payments from the premium supplied under the finance note constituted unfair or deceptive practices on the part of Peoples. “There is no clear definition of what conduct constitutes an ‘unfair or deceptive’ act.” Ahern v. Scholz, 85 F.3d 774, 798 (1st Cir. 1996). Therefore, whether conduct falls within the scope of G.L.c. 93A depends on the facts and circumstances of each case. Arthur D. Little, Incorporated v. Dooyang Corporation, 147 F.2d 47, 55 (1st Cir. 1998). In practice, Massachusetts courts have found conduct to be unfair if it meets one of three tests: it falls “within any recognized conception of unfairness,” it is “immoral, unethical, oppressive or unscrupulous,” or it would cause “substantial injury to consumers, competitors, or other businessmen.” PMP Associates, Incorporated v. Globe Newspaper Company, 366 Mass. 593, 596 (1975). Notwithstanding Thrifiy’s allegation that the practice of applying a premium to its policy amounts to a violation of G.L.c. 93A since the policy was modified after the premium was paid in full, this practice does not fall within any recognized conception of unfairness.
In the present circumstances, Peoples had full possession and control of the financed premium. In addition, at the time of financing, Thrifly contemplated the complete exhaustion of the premium through its application toward the policy in question. Peoples possessed the premium under operation of law. New England Acceptance Corporation v. American Manufacturers Mutual Insurance Company, 4 Mass.App.Ct. 172, 180. Peoples only applied that premium to the policy for which it was designated. In addition, to the extent that the premium was consumed at a more rapid rate then Thrifty *202 expected at the time of financing, Peoples was providing additional coverage or coverage at a greater risk. In these circumstances, there is no evidence that Thrifty engaged in unfair or deceptive business practices.[9]

II. People’s Counterclaims A.Intentional Interference with Contracts or Advantageous Business Relationships (Counterclaims I, II)

In an action for intentional interference with contractual relations, the plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and, (4) the plaintiff was harmed by the defendant’s actions. G.S. Enterprises, Incorporated v. Falmouth Marine, Incorporated, 410 Mass. 262, 272 (1991). The same elements apply to the tort of intentional interference with an advantageous business relationship. Netherwood v. American Federation of State, County and Municipal Employees, Local 1725, 53 Mass.App.Ct. 11, 21 (2001). Case law makes clear that a party must demonstrate “(s)omething more than intentional interference.” Bourque v. Cape Southport Associates, LLC, 60 Mass.App.Ct. 271, 277-78 (2004). Although a party may bring a lawsuit to assert rights in good faith, an action may constitute intentional interference with a contract of business relationship if “its initiator does not have probable cause to believe the suit will succeed, and is acting primarily for a purpose other than that of properly adjudicating his claims.” C.S. Enterprises, Incorporated v. Falmouth Marine, Incorporated, 410 Mass. at 272. “Claims of intentional interference with contractual or advantageous relations require a showing that the defendant knowingly and for an improper purpose or by improper means induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage.” Buster v. George W. Moore, Incorporated, 438 Mass. 635, 652 (2003); Wright v. Shriners Hospital 412 Mass. 469, 476 (1992) (stating that the purpose must be unrelated to a legitimate corporate interest). In the present matter, Peoples does not allege that Thrifty had the requisite intent, to interfere with specific third parties, and therefore the counts must fail.
The gravamen of Peoples’ allegation is that Thrifty brought this suit, without legal merit, for the sole reason of harming Peoples. To prove intentional interference with a contract or business relationship, Peoples must show that Thrifiy interfered with specific third parties who either had existing contracts or with which Peoples contemplated a business relationship with economic benefit. Bourque v. Cape Southport Associates, LLC, 60 Mass.App.Ct. at 277. Peoples, in the face of a motion for summary judgment, merely rests on its allegations that the specter of a lawsuit will cast a chill over existing contracts and dampen the prospects of future relationships. The failure to allege Thrifty had specific knowledge and the failure to allege that Thrifty attempted to induce third parties to breach or not enter a contract prevents Peoples from success on these claims.

B.Malicious Prosecution (Counterclaim III)

A cause of action exists in Massachusetts for the malicious use of legal process against a party. To succeed under the cause of malicious prosecution, the plaintiff must establish: (1) the original action was brought maliciously; (2) the original action was brought without probable cause; and (3), the original action has been terminated in favor of the plaintiff. Beecy v. Pucciarelli, 387 Mass. 589, 593-95 (1982); Hubbard v. Beatty & Hyde, Incorporated, 343 Mass. 258, 260-61 (1961) (“In order to prevail in such an action, the plaintiff must establish that the original action was brought maliciously and without probable cause, and has been terminated in favor of the plaintiff’). In the present case, this cause is not ripe. Even if Peoples was able to demonstrate that there was malicious intent in bringing the action combined with a lack of probable cause, the action has not terminated. Therefore, the action has not terminated in Peoples’ favor.[10]

C.Civil Conspiracy (Counterclaim IV)

Massachusetts recognizes two forms of civil conspiracy. Kurker v. Hill, 44 Mass.App.Ct. 184, 188 (1998). The first form of civil conspiracy requires proof that, through force of numbers, the tortious parties had a “peculiar power of coercion” greater than the parties would have had as individuals. Fleming v. Dane, 304 Mass. 46, 50 (1939) (“[I]t must be shown that there was some ‘peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would not have had’ ”), quoting DesLauries v. Shea, 300 Mass. 30, 33 (1938). The second form of civil conspiracy consists of the combined action of tortious parties to affect an illegal purpose, even if the means are legal. Gutierrez v. Massachusetts Bay Transportation Authority, 437 Mass. 396, 415 (2004) (“To establish a civil conspiracy, a plaintiff must demonstrate that ‘a combination of persons [acted] pursuant to an agreement to injure the plaintiff ”) (citation omitted); New England Foundation Company v. Reed, 209 Mass. 556, 560 (1911) (“The gist of a civil action of this sort is not the conspiracy, but the deceit or fraud causing damage to the plaintiff, the combination being charged merely for the purpose of fixing joint liability on the defendants”). It is not sufficient to show that the parties committed independent torts, but rather showing the existence of an agreement is essential. Gutierrez v. Massachusetts Bay Transportation Authority, 437 Mass. at 415.
Peoples alleges that Thrifiy conspired with Economy Insurance Agency, Inc. and Sumner Gilman, president of both Thrifty and Economy Insurance Agency, Inc., to file a malicious lawsuit against Peoples. Bare assertions, however, are not sufficient to withstand a well-pled motion for summaiy judgment. Community National *203 Bank v. Dawes, 369 Mass. at 559. In the present case, Peoples did not respond to Thrifty’s motion for summary judgment on the count of civil conspiracy. Therefore, summary judgment is appropriate as against the counterclaim for civil conspiracy.

D. Violation of G.L.C. 93A (Counterclaim V)

Peoples alleges that Thrifty’s alleged unfair or deceptive acts or practices are “willful and intentional.” Here, Peoples’ allegation of unfair action require a finding that Thrifty acted maliciously with an intent to disrupt Peoples' normal course of business. Bare assertions are not sufficient to withstand a well-pled motion for summary judgment. Community National Bank v. Dawes, 369 Mass. at 559. Peoples has presented no evidence, beyond the filing of the suit, to substantiate its counterclaim. Therefore, summary judgment is appropriate as against the counterclaim of violation of G.L.c. 93A.

Order for Judgment

For the foregoing reasons, the plaintiffs motion for summary judgment is ALLOWED IN PART, only as to each of the counterclaims brought against it. Thrifty’s motion for summary judgment on its claims against Peoples is DENIED, and pursuant to Rule 56(c), the court ORDERS that summary judgment enter on behalf of the defendant on each of Thrifty’s claims against it.

 The claims are as follows: Wrongful Conversion (Count I); Violation of G.L.c. 175, §187B (Count II); Declaratory Relief (Count III); and, Unfair and Deceptive Acts and Practices, in Violation of G.L.c. 93A (Count V).

 The counterclaims are as follows: Intentional Interference with Contracts (Count I); Intentional Interference with Advantageous Business Relationships (Count II); Malicious Prosecution (Count III); Civil Conspiracy (Count IV); and, Unfair and Deceptive Acts and Practices, in Violation of G.L.c. 93A (CountV).

 Thrifty orally amended the motion for summary judgment to refer only to liability, conceding that there was a material dispute of facts as to damages.

 Peoples contends that summary judgment is not appropriate because a material dispute exists as to the characteristics of some of the 86 policies in question. Nevertheless, there is no allegation that all of the policies in question lack the characteristics which would make this suit appropriate.

 The finance note reads, in part, as follows:
The maker hereby irrevocably appoints the holder the maker’s true and lawful attorney to execute and deliver all documents and perform all acts necessary or appropriate to effect cancellation of the policies and to demand, collected, sue for, receive and receipt for any return premiums . . . which amounts shall be applied toward satisfaction of this note . . .

 GeneralLawsc. 175, §113H, mandates that motor vehicle insurance companies “shall cooperate in the preparation and submission of a plan which shall provide motor vehicle insurance to applicants who have been unable to obtain insurance through the method by which insurance is voluntarily made available ...” The plan in question established the Commonwealth Automobile Reinsurers (“CAR”). Article X of the plan adopts rules of operation in order to assure that “CAR Fractions efficiently and at all times consistently with this Plan.” Commonwealth Automobile Reinsurers Rules 13 and 15, relevant to this section, are found in the rules of operation. In addition, G.L.c. 175, §113B additionally allows the commissioner to make or change “reasonable rules and regulations to facilitate the operation” of the statute. The Massachusetts Private Passenger Automobile Insurance Manual was created under this power. See Massachusetts Private Passenger Automobile Insurance Manual, Memorandum of Changes. Neither party suggests that the rules are not binding through either contract law or statute, and therefore the court will assume that the rules carry the force of law. See generally Hanover Insurance Company v. Commissioner of Insurance, 443 Mass. 47, 48 (2004); Hartford Accident and Indemnity Company v. Commissioner of Insurance, 407 Mass. 23, 26-30 (1990).

 General Laws c. 175, §187B reads, in part, as follows:
An insurance agent may offset funds due an insured for return premiums on any policy against amounts due him from the same insured for any due and unpaid premiums on any other policy issued by the same insurer. An insurer may pay return premiums to any agent for such purpose. An insurer whose return premiums are used by an insurance agent to offset funds due him shall be held to have discharged its obligations to its insured for such return premiums. This section shall not invalidate an assignment of return premium made concurrently with policy insurance as security for financing such premium, nor the right of the assignee, or his assign, to enforce such assignment as a prior claim. Id.

 Given the failure of Thrifty’s substantive claims, its prayer for declaratoiy relief must also be disposed of with summary judgment.

 Given Peoples’ failure in this element of the malicious prosecution claim, it is unnecessary to determine whether Peoples would have succeeded in showing that Thrifty’s actions were the product of “malice.” Beecy v. Pucciarelli, 387 Mass. at 593. See Massachusetts Superior Court Civil Juiy Instructions §22.1.5 (MCLE 1998) (malice is acting with an improper motive, such as vexation, harassment, or annoyance). Nevertheless, it is not evident that Peoples has demonstrated that Thrifty’s purpose misguided or not in commencing the current action was to injure Peoples and not the furtherance of Thrifty’s legal rights and financial interests.