Fabricant, Judith, J.
INTRODUCTION
These cases arise from contracts entered into by each of the plaintiffs[2] with NorVergence, Inc. In each instance, after execution of the contract, NorVergence, Inc., assigned the contract to one of the defendant finance companies. In each case, the plaintiff— NorVergence’s customer — alleges that it entered into the contract as a result of fraudulent conduct on the part of NorVergence, Inc. On that basis, the customers seek to rescind the contracts and to recover damages from the finance companies. Before the Court is the customer’s motion in each case for summaiy judgment with respect to the declaratory judgment count of each complaint, which seeks rescission of the con *122 tract.[3] For the reasons that will be explained, the customers’ motions will be denied.
BACKGROUND
The summary judgment record establishes the following facts as undisputed for purposes of these motions.[4] Each plaintiff is a business or the operator of a business. NorVergence approached each plaintiff with a proposal for cost savings on telecommunication services, claiming that its services, together with a device referred to as a “matrix box” would generate such savings. NorVergence misrepresented the nature and value of the matrixbox, the savings to be achieved, and the payments that would be required. NorVergence presented an agreement to each plaintiff, with various other papers. Each plaintiff executed the agreement. NorVergence did not provide the services it promised, and the plaintiffs did not achieve the expected savings.
After execution of the agreements, NorVergence assigned them to the defendant finance companies. The finance companies, according to their affidavits, are independent of NorVergence, which did not act as their agent. They engaged in arms-length transactions with it in which they paid it for assignment of the contracts. They notified the customers of the assignments. After defaults by the customers, they have sought to collect on the contracts.
The contracts are in a standard form, identical in each case. The form bears a label, in bold face at the top, “Equipment Rental Agreement.” The front page of the form states, “We agree to rent to you and you agree to rent from us the Equipment listed below (the “Equipment”). You promise to pay us the Rental Payments shown below according to the payment schedule below.” A box then appears, showing the word “Matrix” with a quantity. Below that box appears “Transaction Terms: Rental Payment $” with a number filled in as the amount of the rent, followed by “Rental Term,” with a number of months filled in. Below that is the following:
You agree to all the terms and conditions shown above and the reverse side of this Rental, that those terms and conditions are a complete and exclusive statement of our agreement and that they may be modified only by written agreement between you and us. Terms or oral promises which are not contained in this written Rental may not be legally enforced. You also agree that the Equipment will not be used for personal, family or household purposes. You acknowledge receipt of a copy of this Rental. Your obligations to make all Rental Payments for the entire term are not subject to set off, withholding or deduction for any reason whatsoever.
There follows language authorizing the Rentor to file a UCC-1 financing statement, and then, in larger, bold faced type, in capital letters, “THIS RENTAL MAY NOT BE CANCELLED OR TERMINATED EARLY.” The back side of the form, initialed by the customer in each instance, contains a series of contract provisions. Among them are:
ASSIGNMENT: YOU MAY NOT SELL, PLEDGE, TRANSFER, ASSIGN OR SUBRENT THE EQUIPMENT OR THIS RENTAL. We may sell, assign or transfer all or any part of this Rental and/or the Equipment without notifying you. The new owner will have the same rights that we have, but not our obligations. You agree you will not assert against the new owner any claims, defenses or set-offs that you may have against us.
ARTICLE 2A STATEMENT: YOU AGREE THAT IF ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE IS DEEMED TO APPLY TO THIS RENTAL, THIS RENTAL WILL BE CONSIDERED A FINANCE LEASE THEREUNDER. YOU WAIVE YOUR RIGHTS AND REMEDIES UNDER ARTICLE 2A of the UCC.
OTHER CONDITIONS: You understand and agree that:
YOUR DUTY TO MAKE THE RENTAL PAYMENTS IS UNCONDITIONAL DESPITE EQUIPMENT FAILURE, DAMAGE, LOSS OR ANY OTHER PROBLEM. RENTER IS RENTING THE EQUIPMENT AS IS’ WITHOUT ANY WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN CONNECTION WITH THIS AGREEMENT. If the Equipment does not work as represented by the manufacturer or supplier, or if the Equipment is unsatisfactory for any reason, you will make any such claim solely against the manufacturer or supplier or other person and will make no claim against us.
NO WARRANTIES: We are renting the Equipment to you AS IS’. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN CONNECTION WITH THIS AGREEMENT. We transfer to you for the term of this Rental all warranties, if any, made by the manufacturer or supplier to us. We are not liable to you for any modifications or rescission of supplier or manufacturer warranties. You agree to continue making payments to us under this Rental regardless of any claims you may have against the supplier or manufacturer. YOU WAIVE ANY RIGHTS WHICH WOULD ALLOW YOU TO: (a) cancel or repudiate the Rental; (b) reject or revoke acceptance of the Equipment; ( c) grant a security interest in the Equipment; (d) accept partial delivery of the Equipment; (e) ‘cover’ by making any purchase or Rental of substitute Equipment; and (f) seek specific performance against us.
*123 YOU UNDERSTAND THAT ANY ASSIGNEE IS A SEPARATE AND INDEPENDENT COMPANY FROM RENTOR/MANUFACTURER AND THAT NEITHER WE NOR ANY OTHER PERSON IS THE ASSIGNEE’S AGENT. YOU AGREE THAT NO REPRESENTATION, GUARANTEE OR WARRANTY BY THE REN-TOR OR ANY OTHER PERSON IS BINDING ON ANY ASSIGNEE, AND NO BREACH BY RENTOR OR ANY OTHER PERSON WILL EXCUSE YOUR OBLIGATIONS TO ANY ASSIGNEE.
On November 24, 2004, after the contracts with these customers had been assigned to the defendant finance companies, the Massachusetts Attorney General brought suit against NorVergence in Suffolk Superior Court on behalf of its Massachusetts customers, alleging violations of G.L.c. 93A. NorVergence, which was then in bankruptcy, defaulted. As far as the record discloses, the finance companies were not joined or served, and did not participate. On June 9, 2004, the Court (Gants, J.) issued a memorandum of decision finding facts and ordering entry of judgment against NorVergence. The Court found facts in accord with the allegations the customers make in these cases. The judgment declared that NorVergence’s customer contracts “are rescinded and unenforceable,” and that “the NorVergence customer contracts and purported debts arising from the rescinded contracts described in the Complaint are cancelled.” The customers’ summary judgment motions in these cases rest largely on the theory that the finance companies are bound by the judgment against NorVergence, and that that judgment establishes that the contracts are void. The finance companies contest that theory, pointing out that they had no notice of or opportunity to participate in the Attorney General’s suit.
DISCUSSION
This Court grants summary judgment only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating that there is no genuine dispute of material fact on every relevant issue “even if he would have no burden on an issue if the case were to go to trial.” Pederson v. Time, Inc., 404 Mass 14, 17 (1989).
On a motion for summary judgment, the moving party must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the nonmoving party must respond and offer evidence of specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson v. Time, Inc., supra at 17.
The customers’ principal argument in support of summary judgment on their declaratory judgment claim is that the finance companies are bound by the judgment in the suit brought by the Attorney General under the doctrine of claim preclusion or issue preclusion. The Appeals Court provided a helpful summary of the law on these doctrines in Bourque v. Cape Southport Associates, LLC, 60 Mass.App.Ct. 271, 273-77 (2004). As the Court there observed, “(f)or preclusive effect to flow from a prior judgment, the party against whom preclusive effect is asserted must have been either a party in the prior case or in privity with a party . . . The examination essentially reduces itself to an inquiry whether the party against whom preclusion is asserted participated in the prior proceeding, either himself or by a representative.” Id. at 274 (citations omitted). A party may be subject to preclusion if it exercised “substantial control” over the party in the previous action, but mere coincidence of interest in proving certain facts does not suffice. Id. at 275. Nor does a contractual relationship establish privity for issue preclusion purposes. See id. A business relationship alone does not establish virtual representation of one party by another. Id. at 276. In the absence of privity, a parly cannot be held bound by a prior judgment against another party, consistent with the constitutional right to due process. Id. at 277. Here the summaiy judgment record fails to establish privity between NorVergence and the finance companies. The record reveals assignments of contracts, but provides nothing to indicate that the assignments resulted from anything other than arms-length transactions. No evidence indicates that the finance companies in any way controlled NorVergence, or that any relationship existed between them other than the contracts of assignment. Nothing suggests that NorVergence represented the finance companies or any interests of theirs in the Attorney General’s suit; to the contrary, it is undisputed that NorVergence did not appear or defend that action at all. Under these circumstances, the finance companies are not bound by the judgment against NorVergence, and that judgment cannot support any action against the finance companies in these cases.
The customers argue that they are entitled to summary judgment on their declaratory judgment claims even if that judgment is not binding against these defendants, based on the facts presented in their verified complaints, as summarized supra. They contend that the contracts were void ab initio, having been procured by fraud, so that the assignments conveyed nothing to the assignees.
The facts presented do not support this contention. Nothing in the record indicates that the customers *124 were in any way prevented from reading or understanding the contracts before signing them, or that they were in any way misled as to their nature or meaning. As a matter of law, they are deemed to have knowledge of the contents of the contracts they signed. See Hull v. Attleboro Savings Bank, 33 Mass.App.Ct. 18, 24 (1992). The customers have shown, at most, fraud in the inducement, as distinct from what has been labeled fraud in the factum. Fraud in the inducement does not render a contract void. See Federico v. Brockton Credit Union, 39 Mass.App.Ct. 57, 63 (1995), citing Langley v. Federal Deposit Insurance Corporation, 484 U.S. 86, 91-92 (1987).
The contracts by their terms preclude assertion by the customers of any claims or defenses against the assignees that might be available against NorVergence. Such provisions are enforceable by statute where the assignee has purchased the assignment in good faith, for value, without notice of a claim. See G.L.c. 106, §9-402(b).[5] The only evidence before the Court is that the assignees did so.
The customers rely on Quincy Trust Co. v. Town of Pembroke, 346 Mass. 730, 732 (1964), for the general proposition that an assignee stands in the shoes of an assignor, so that the finance companies here can have no greater rights than NorVergence would have. That case does not stand for such a broad proposition. There the Court construed the particular assignment in issue as “an assignment only of an interest in a contract and not of an amount of money,” so that “[i]n this case the assignee stands in no better position than the assignor, and any defense the defendant could raise against the latter may also be raised against the former.” Id. Here, the plain terms of the contract identify it as an assignment of an unconditional debt in a specified amount, payable on specified terms over a specified period of time, regardless of any defenses the customer may have against the assignor. Quincy Trust has no bearing on the issues here.
The customers also cite Harrison Mfg. Co., Inc. v. Philip Rothman & Son, Inc. 336 Mass. 625, 628 (1958); and Buttrick Lumber Co. v. Collins, 202 Mass. 413, 418 (1909). Harrison construed a statute permitting assignment of a chose in action as allowing the assignee to assert defenses it would have had against the assignor. Unlike the unconditional debt expressed in these contracts, a chose in action is by its nature contingent, and subject to defenses. Buttrick involved an assignment that was by its express terms limited to amounts that would become due upon performance of an underlying contract; the assignment was thus inherently subject to the contingency of that performance. The contracts here, by their plain terms, are unconditional and not subject to any contingency. Nothing before the Court provides any basis for the customers to avoid enforcement of the contracts according to their terms.
Although they have not cross moved for summary judgment, some of the defendants have argued that they are entitled to summary judgment on some or all of the claims. On the record before the Court, their arguments have considerable strength, for the reasons already discussed. Pursuant to Mass.R.Civ.P. 56(c), the Court can enter summary judgment against the moving party, where appropriate. The Court declines to do so here, because the customers have not had an opportunity to address the finance companies’ assertions of their status as good faith purchasers for value without notice. Some discovery may be appropriate on that issue. Accordingly, the Court will order the scheduling of a conference pursuant to Mass.R.Civ.P. 16, for the purpose of identifying and scheduling any discovery that may be necessary, and any further motion proceedings that may be warranted. In advance of such conference, counsel are directed to confer in an effort to reach agreement on a proposed scheduling order.
CONCLUSION AND ORDER
For the reasons stated, the Customers Motion for Summary Judgment is DENIED. The clerk shall schedule a conference pursuant to Mass.R.Civ.P. 16 at the earliest available date.

In case no. 05-846, the plaintiff-in-counterclaim.

Although the customers' motions for summary judgment do not state any limitation as to the counts of the complaints, counsel at argument indicated that the customers’ intention is to seek summary judgment only as to the declaratory judgment counts.

The sole factual basis the plaintiffs provide for their motions is the verified complaint in each case. The complaints include certain facts alleged “on information and belief,” and certain facts that appear beyond the personal knowledge of the individual providing verification. The Court disregards those. The Court also disregards factual assertions in the verified complaints that are inconsistent with the documents appended as exhibits, particularly the contracts themselves. The facts recited herein are those for which a foundation of personal knowledge appears in the allegations of the verified complaints, and that are consistent with the exhibits to the complaint. As to those the defendants have not established the existence of any dispute in the manner provided by Superior Court Rule 9A(b)(5); they are therefore deemed admitted. Some of the defendants have offered additional facts by way of affidavit; those facts are included herein and treated as undisputed for purposes of these motions. Some of the defendants have also taken the position that they cannot fully respond to the motions because they have not had an opportunity to conduct discovery. In support of that position, two of the defendants’ attorneys have submitted affidavits pursuant to Mass.R.Civ.P. 56(f). One of those, sub *125 mitted by counsel for the finance companies in cases nos. 04-1496, 05-861, 05-846, asserts only that they received service of the summary j udgment motions before conducting any discovery; it does not identify the discovery sought or explain how such discovery would assist in responding to the motion. That assertion provides no basis for postponing consideration of the motions. The other, submitted by counsel for OFC Capital, a defendant in no. 05-875, asserts that counsel seeks to depose the individual who verified the complaint in that case, to test his personal knowledge of the allegations. As indicated supra, the Court has disregarded those allegations of the verified complaints that do not provide a foundation of personal knowledge. See Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 308 (1991).

Under §9-402(c), the debtor may assert those defenses that would be available under §3-305(b) against a holder in due course of a negotiable instrument. Those defenses are limited to infancy, duress, lack of legal capacity, illegality of the transaction, discharge in insolvency, or “fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms.” Nothing in the present record supports any of those defenses.